**BAKER BOTTS** LLP

| | |
|---|---|
| 101 CALIFORNIA ST.<br>SUITE 3600<br>SAN FRANCISCO, CALIFORNIA<br>94111<br><br>TEL  +1.415.291.6200<br>FAX  +1.415.291.6300<br>BakerBotts.com | AUSTIN        LONDON<br>BEIJING       MOSCOW<br>BRUSSELS   NEW YORK<br>DALLAS        PALO ALTO<br>DUBAI          RIYADH<br>HONG KONG  **SAN FRANCISCO**<br>HOUSTON   WASHINGTON |

January 8, 2021

<u>*Via ECF and E-mail*</u>

Jonathan A. Shapiro
TEL: 4152916204
FAX: 4152916304
jonathan.shapiro@bakerbotts.com

Honorable Victor Marrero
Unites States District Judge, Southern District of New York

      Re:    *Tecku, et al. v. YieldStreet, Inc., et al.*, No. 1:20-cv-07327 (VM)

Dear Judge Marrero:

      Pursuant to the Court's Individual Rules of Practice, we write to report that the parties have been unable to resolve their dispute regarding Defendants' contemplated motion to dismiss, and that such a motion remains warranted.[1] Plaintiffs assert claims for which they have no standing, under a Delaware statute that does not even apply to their securities purchases, and under a fiduciary duty theory that fails as a matter of law because our client owed no such duty. Although Plaintiffs indicated they may attempt to cure some of these deficiencies by amending their pleading if they are required to do so by the Court, they have declined to take advantage of the opportunity to replead on their own. Regardless, it is not clear how any future amendment could confer the Article III standing that Plaintiffs lack, much less address the several alternative grounds apparent on the face of the Complaint that also require dismissal.

      ***Plaintiffs lack Article III standing.*** Plaintiffs' claims are at best premature: the ALTNOTES-issued notes in which they invested are *not* in default, and Plaintiffs have suffered no compensable injury. The Second Circuit has recognized that an investor in a debt offering who has suffered no out-of-pocket loss—and here there is no amount overdue to Plaintiffs, and the SPVs that hold the underlying debt continue active collection—has no compensable damages under § 12(2) of the Securities Act of 1933 (on which DSA § 73-605 is based). *Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994); *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 245–46 (plaintiffs raising Securities Act claims under §§ 11 and 12 alleged no "injury in fact" sufficient to support Article III standing where the bonds were trading above the offering price). Plaintiffs' argument focusing on the alleged wrongdoing misses the point; they cannot file a lawsuit based on a supposition that, in the future, part of their investment may be written down. The signed and controlling offering documents pursuant to which Plaintiffs have invested in this debt are clear that there is no promised maturity date, but rather only an "expected" maturity date, and distributions to investors may occur later. Plaintiffs have not suffered any loss under the plain terms of their investments.[2]

---

[1]     On November 20, 2020, Defendants identified multiple fatal deficiencies in the Complaint, notifying Plaintiffs of their intent to seek dismissal under Rules 12(b)(1) and 12(b)(6). Ex. A. Plaintiffs responded on December 11 (Ex. B), and the parties have since met and conferred.

[2]     Consistent with Rule 12(b)(1) Defendants would support their Article III argument with evidence demonstrating that each of the funds for which Plaintiffs prematurely allege harm are, in fact, active pending investments. For example, even since Plaintiffs sued in September of last year, some of the SPVs in which Plaintiffs invested have already fully recovered the amounts due from the borrowers, and other SPVs have just won a $77M

**BAKER BOTTS** LLP

Honorable Victor Marrero	- 2 -	January 8, 2021

*__The Delaware Securities Act does not govern Plaintiffs' investments.__*  Plaintiffs recognize that the DSA applies only if there is a meaningful nexus between Delaware and the transaction at issue—a nexus they do not plead by relying entirely on an Indenture Agreement that bears no apparent relationship to this case.  As stated in Defendants' November 20 letter (and not disputed by Plaintiffs), *none* of Plaintiffs' claims arise from that Indenture Agreement.  *See* Ex. A at 2 n.2.  Nor do they claim that there is anything improper about the indenture or that it harmed them in any way.  Acknowledging the weakness in their position, Plaintiffs now suggest that, in the future, they may seek to rectify their pleading failure by amending to *drop* the inapplicable Delaware claims and instead assert "other applicable common law and state securities claims as appropriate based on Plaintiffs' and class members states of domicile."  That odd threat—to start fresh in this Court by bringing new individual claims under the laws of the named Plaintiffs' four home states, and a putative class action based on the laws of potentially dozens of additional states—is not a basis to oppose dismissal of the pending Complaint.

*__Plaintiffs' § 73-605(a) claims against Yieldstreet Inc. and Yieldstreet Management fail because the documents referenced in the Complaint show neither entity offered or sold the securities.__*  Plaintiffs have no answer to the documents they reference in the Complaint that establish that neither YieldStreet Inc. nor YieldStreet Management "offered or sold" any securities.  Instead, they simply conclude—without citation to any legal authority or to any factual allegation—that those entities' marketing activities somehow give rise to liability under § 73-605(a).  Plaintiffs do no better by suggesting that a "control person" claim under § 73-605(b) may be appropriate; there is no such claim against those entities in the Complaint.

*__Plaintiffs do not plead facts supporting that Yieldstreet Management owed them any fiduciary duty.__*  Plaintiffs cannot avoid dismissal of their fiduciary duty claim against YieldStreet Management (the only Defendant against which that claim is asserted) based on their counsel's professed "belie[f]" that this entity owes a fiduciary duty.  Plaintiffs do not dispute that this supposed "belief" is flatly contradicted by the offering documents referenced in their Complaint, which they received *and signed* acknowledging that YieldStreet Management was *not* their fiduciary.[3]  Plaintiffs also disregard entirely the well-settled case law that "[t]he adviser owes fiduciary duties only to the fund, not the fund's investors."  *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006).

*__Plaintiffs plead nothing about most of the investments they claim were improper.__*  Plaintiffs seemingly concede that their substantive allegations are deficient—their response letter *does not dispute* that the Complaint contains no factual allegations whatsoever about the majority of offerings for which they purport to bring a claim.  As for the two offering categories about

---

Final Judgment against the underlying borrowers from the High Court in the United Kingdom—all demonstrating the speculative nature of *potential* future "harm" that is not today justiciable under Article III..

[3]   Counsel contends that Plaintiffs' belief about fiduciaries came from statements on the YieldStreet.com website, in particular, from supposed "advice . . . communicated using superlatives like 'Why We Like This Opportunity.'"  Ex. B at 3.  Putting aside that the signed offering documents control the offering, there also are no such allegations in the Complaint about website-based fiduciary relationships, nor is the entity YieldStreet Management even referenced in the never-alleged website soundbite in counsel's letter.

**BAKER BOTTS** LLP

Honorable Victor Marrero                - 3 -                January 8, 2021

which Plaintiffs do raise factual allegations—involving a series of marine finance loans to a single borrower, and a single oil and gas loan to a borrower that went bankrupt—Plaintiffs likewise nowhere identify any allegation supporting the requisite material misrepresentation or omission *at the time* of those offerings.[4]

      ***Plaintiffs lack "class standing" to state claims regarding offerings in which they did not invest.*** Plaintiffs do not have class standing to assert claims related to an unidentified number of other offerings involving different SPVs in which Plaintiffs never invested. That ALTNOTES I and ALTNOTES II issued their securities pursuant to two private placement memoranda does not confer class Plaintiffs with standing to assert claims related to every offering either entity made. The inquiry does not turn on whether the allegedly misleading statements are in the same or separate documents, but rather whether the conduct that allegedly caused Plaintiffs' injury implicates the "same set of concerns" as the conduct alleged to have caused injury to others—essentially that the same conduct caused everyone's alleged loss, such that Plaintiffs' "quest to show [Defendants'] wrongdoing with respect to their own claims [will] encompass proving claims related to . . . [the] other" offerings as well. *Ret. Fund of the Policeman's Ann. and Ben. Fund*, 775 F.3d 154, 163 (2d Cir. 2014) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)). *NECA* illustrates why Plaintiffs have no class standing. There, the plaintiffs alleged that underwriting guidelines included in a shelf registration statement (common to all offerings) and in certain prospectus supplements (unique to each offering) were misleading because the originators backing those offerings failed to follow the stated guidelines. 693 F.3d at 150–151. The Second Circuit held the plaintiffs had class standing to raise a claim for offerings backed by the same originator because the proof required to establish whether the originator had abandoned its guidelines would be the same for all offerings the originator had backed. *Id.* at 164–65. But plaintiffs *did not* have class standing as to offerings from other originators because whether their guidelines were followed turned on different proof. *Id.* Here, though certain of the alleged misrepresentations arise from common private placement memoranda, the funds that Plaintiffs did *not* invest in involved different originators, borrowers, and investment products in different industries, and will necessarily require different proof. For example, proof regarding the diligence performed in connection with marine funds would be wholly separate from proof regarding the diligence performed with respect to any fine art fund, real estate fund, litigation finance fund, or other fund that is not the subject of Plaintiffs' individual claims. *See Ret. Fund*, 775 F.3d at 163 (affirming dismissal, holding that plaintiffs lacked class standing because "the nature of the claims in this case unavoidably generates significant differences in the proof that will be offered for each trust").

                                                Respectfully,
                                                */s/ Jonathan A. Shapiro*
                                                Jonathan A. Shapiro

---

[4] To the extent that the factual background provided at the beginning of Plaintiffs' December 11 response is intended to serve as a rebuttal, it points to no pleaded fact in the Complaint from which the Court might find the missing allegations of wrongdoing. For example, one of Plaintiffs' central allegations is that YieldStreet misrepresented that its affiliated funds had suffered no principal loss, but neither the Complaint nor Plaintiffs' December 11 letter provide an explanation as to how the purportedly misleading statement was false when made.