**BAKER BOTTS** L.L.P.

| | | |
|---|---|---|
| 101 CALIFORNIA ST. | AUSTIN | LONDON |
| SUITE 3600 | BEIJING | MOSCOW |
| SAN FRANCISCO, CALIFORNIA | BRUSSELS | NEW YORK |
| 94111 | DALLAS | PALO ALTO |
| | DUBAI | RIYADH |
| TEL +1.415.291.6200 | HONG KONG | **SAN FRANCISCO** |
| FAX +1.415.291.6300 | HOUSTON | WASHINGTON |
| BakerBotts.com | | |

February 12, 2021

**VIA ECF**

Jonathan A. Shapiro
TEL: 4152916204
FAX: 4152916304
jonathan.shapiro@bakerbotts.com

Honorable Victor Marrero
United States District Judge, Southern District of New York

      Re:    *Tecku, et al. v. YieldStreet, Inc., et al., No. 1:20-cv-07327 (VM)*

Dear Judge Marrero:

      Plaintiffs' February 5 letter (the "Response") serves only to highlight the fatal pleading deficiencies in the Complaint. Defendants address each deficiency below.

      ***The Response demonstrates that Plaintiffs lack Article III standing.*** Plaintiffs have not met their burden to show standing. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 330 (2d Cir. 1997). Critically missing from the Complaint and letters is any cogent theory, let alone the required showing, that they "suffered a concrete injury that can be fairly traced to any action of the defendants." *Id.* Plaintiffs today own precisely what they purchased: high-yield/high-risk notes[1] that ultimately will perform based on future factors, including the amount/timing of payments by borrowers with underlying loans and, if the borrowers do not pay, collections from guarantors, collateral sales, credit insurance, etc. Decl. ¶¶ 3-8, 13-27; Exs. A-S.

      The critical point: Plaintiffs' notes have never been and are not now in default, as Plaintiffs now acknowledge.[2] *Id.* ¶¶ 9-12. That underlying borrowers are in partial or full default of their separate obligations to the SPVs does not provide any basis for Plaintiffs to presume that, in the future, they will suffer a default in *their* notes such that they will not recover their principal, or even interest at the targeted not-guaranteed yields, all as set out in offering documents. *Id.* ¶¶ 3-8, 13-22.

      Plaintiffs' assumption that some or all of the diverse notes purchased in multiple offerings will default is a classic speculative injury. To date, no Yieldstreet note has ever been in default; the Yieldstreet SPVs have returned all principal on more than 135 offerings, including multiple

---

[1]    As the New York Supreme Court just ruled in dismissing with prejudice claims by a Yieldstreet investor (and member of *this* class), Yieldstreet offerings have "giant warnings all over [them] about how risky this investment is and you may lose everything"—purchasers "undisputedly took on the risk of having default." Ex. 1 (*Berten v. YieldStreet Management, LLC*, Index 65420/20 in Supreme Court of the State of New York, Jan. 22, 2021 Hrg. Tr.) at 11:21–23, 13:15–16, *see also* 17:16–17.

[2]    Plaintiffs now backpedal in the Response that their case is not "premised on [Yieldstreet] declaring a default on the notes." Resp. 2. That flatly contradicts their Complaint, which unquestionably is premised on the notes being in default. Plaintiffs explicitly claim injury—the very basis for Article III standing—from purchasing "*now-defaulted YieldStreet BDPNs*," and then claim Defendants are liable for "induc[ing] investors [into] a number of *now defaulted offerings*." Compl. ¶¶ 54, 123 (emphasis added). Even their proposed class is defined by reference to "defaults" that they now acknowledge have not—and may very well never—occur. Compl. ¶ 138 (defining class as "persons who purchased a [BDPN] issued by YS ALTNOTES I or YS ALTNOTES II *in one of YieldStreet's defaulted funds . . .*").

offerings where, just like here, there was exposure to an underlying default. *Id*. ¶¶ 5, 23-27. The offerings are risk mitigated such that the SPVs can fully recover from borrower defaults through, for example, borrower negotiations, legal proceedings, collection from guarantors, and insurance claims. *Id*. ¶¶ 3-8, 13-27. The speculative nature of the injury alleged in the Complaint is confirmed by the fact that, since this case was filed, two note offerings *Plaintiffs themselves purchased* that were exposed to underlying borrower default have *already* recovered, with investors receiving principal with interest at the target yield. *Id*. ¶¶ 23-27. Recovery efforts are underway for the other deals for which Plaintiffs prematurely sued. *Id*. ¶¶ 13-22. One has already repaid nearly 80% of principal, with a judicial action pending to sell collateral worth several times the remaining loan balance. *Id*. ¶¶ 19-21. Actions underway to collect the others have thus far been successful, including a judgment against Vessel Deconstruction guarantors in an amount greater than that owed by the borrower. *Id*. ¶ 13-27, Ex. T. *Today investors in these funds have no injury*. And while (per the express offering terms) there is no guarantee that the full debt will be collected, there is no way to now know whether that will be the case for any of these offerings, and if so for which. These claims are premature; Plaintiffs today have no injury or standing.[3]

***The Response demonstrates that the DSA does not apply.*** Plaintiffs bury their argument for application of Delaware law at the end of the Response; it turns on (1) the supposed involvement of a Delaware Trustee; (2) Defendants' incorporation in Delaware; and (3) a choice of law provision in the Subscription Agreement. None demonstrate the requisite "substantial nexus" between Delaware and *the transaction at issue* required to state a DSA claim. It is well-settled that neither the status as a Delaware entity nor the presence of a choice of law clause is sufficient. *See, e.g.*, *Finom Mgmt. GmbH v. Celerion Holdco, LLC*, C.A. No. 18-12-13-LPS, 2019 WL 4451980, at \*6 (D. Del. 2019) (rejecting argument that choice of law provision can be nexus); *Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977) *overruled on other grounds by Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983) (company "not bound [by the DSA] simply because the company is incorporated [in Delaware]"). The Response argument that the Trustee is involved in "virtually every aspect" of the offerings ignores their Complaint: Plaintiffs have not sued the Trustee, and in fact only mention the Trustee and Indenture Agreement in 2 of 190 paragraphs, and only then as a legal contention that Delaware law governs. Compl. ¶¶ 47-48. The transaction at issue —Plaintiffs' purchases of notes—did not involve the Trustee, and the Indenture Agreement in no way bears on the claims. *None* of the purported misrepresentations arise from the Indenture Agreement. *None* of the alleged misconduct implicates the Indenture Agreement. The *only* proffered link of the Indenture Agreement to the transactions at bar is the Trustee's rights in an "Event of Default," which have no apparent relation to Plaintiffs' claims.[4]

***The Response does not address Plaintiffs' lack of standing to assert claims on behalf of investors who participated in different offerings in which Plaintiffs never invested.*** The

---

[3] Plaintiffs cannot solve the Article III problem by arguing "this is a rescission case." Resp. 2. Rescission is a remedy that, perhaps, would be available to a plaintiff who pleaded a ripe injury—not a speculative claim of a future default. Plaintiffs' prayer for rescission does not satisfy their threshold burden to show a justiciable injury to litigate today. The *Dornberger* opinion Plaintiffs cite is clear: "a plaintiff seeking rescission . . . *must still show injury in some sense*." *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 543 (S.D.N.Y. 1997) (emphasis added).

[4] Plaintiffs' contention that "in the event a borrower defaults, the Trustee has the right to become paying agent," Compl. ¶ 48, is flatly contradicted by the offering documents. *See* Decl. ¶ 2, Exs. J-K; Nov. 20, 2020 Ltr. at 2 n. 2.

**BAKER BOTTS** LLP - 3 - February 12, 2021

Honorable Victor Marrero

Response fails to even address class standing. *See* Nov. 20, 2020 Ltr. at 3; Jan. 8, 2021 Ltr. at 3.

***The Response demonstrates Plaintiffs' failure to plead that Yieldstreet Inc. and Yieldstreet Management ("YSM") "offered or sold" securities.*** Neither the fact that Yieldstreet Inc. owns/hosted a website domain through which ALTNOTES issued the notes, nor that YSM advises other Yieldstreet entities, makes either a statutory "seller."[5] The Supreme Court has made clear: "§12's failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants' collateral to the offer or sale." *Pinter v. Dahl*, 486 U.S. 622, 650 (1988). The Private Placement Memoranda are also clear: the notes were offered and sold by the ALTNOTES entities. Ex. J at 1; Ex. K at 1.

***The Response demonstrates Plaintiffs' failure to plead that YSM owed a fiduciary duty.*** Plaintiffs point to no pleaded facts establishing the sort of individualized advice necessary to overcome the longstanding presumption that a fund advisor "owes fiduciary duties only to the fund, not the fund's investors." *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006). The *only* link identified in the Response between YSM and Plaintiffs is the bald assertion that YSM prepared the Series Note Supplements that the offeror SPV provided to Plaintiffs and that those documents "offer[ed] investment advice" derived from YSM due diligence. None of that is in the Complaint, nor would it plead a fiduciary if it had been alleged. Of course a fiduciary owes duties to those it advises. Resp. 3. But YSM advised *the SPVs*, not the individual investors.[6] Plaintiffs' signed acknowledgement that YSM was not acting as a fiduciary was not an attempt to "disclaim … duties via contract," Resp. 3, but rather an unambiguous statement of fact. Exs. A-I at § 2(f).

***The Response does not address Plaintiffs' failure to plead anything about most of the investments they seek to include.*** Plaintiffs repeat the Complaint's conclusory allegations concerning a series of marine finance loans to a single borrower and one oil and gas loan, but again fail to identify *any* pleaded fact pertaining to the dozens of other offerings for which they purport to bring a claim. As to the offerings about which Plaintiffs plead factual allegations, the Response again fails to identify a material misrepresentation or omission. *See* 6 Del. C. § 73-605.

Respectfully,

*/s/ Jonathan A. Shapiro*
Jonathan A. Shapiro

---

[5] *See Youngers v. Virtus Investment Partners Inc.*, 195 F. Supp. 3d 499, 522–23 ("At most, the Complaint alleges that [Defendant] distributed marketing materials 'through their website and other channels.' *But such allegations are insufficient*.") (emphasis added).

[6] *Goldstein* did not turn on the advisee's status as a hedge fund, Resp. n.4, but rather on the fact that the only direct relationship "exist[ed] between the adviser and the fund, not between the adviser and the investors in the fund" and that the "adviser is concerned with the fund's performance, not with each investor's financial condition." 451 F.3d at 880. Yieldstreet's corporate structure is irrelevant: Plaintiffs allege *no* fact suggesting that *any* Yieldstreet entity "reviewed potential investors' finances and investment goals and based their recommendations on those factors." *Saunwin Int'l Equities Fund LLC v. Donville Kent Asset Mgmt. Inc.*, No. 17-11585-FDS, 2018 WL 3543533 at *11 (D. Mass. Jul. 20, 2018). Plaintiffs' threadbare assertion that "[YSM] also owes a common law fiduciary duty," Resp. 3, is likewise devoid of any reference to law or pleaded fact that would give rise to a "special trust" relationship.