```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/26/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MICHAEL TECKU, et al.,                :
                                      :
                Plaintiffs,           :
                                      :       20 Civ. 7327 (VM)
        - against -                   :
                                      :
YIELDSTREET, INC., et al.,            :       **DECISION AND ORDER**
                                      :
                Defendants.           :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

    Plaintiffs Michael Tecku, David Finkelstein, Lawrence Tjok, and Adrienne Cerulo, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), bring this action against Yieldstreet Inc., Yieldstreet Management LLC, YS Altnotes I LLC, YS Altnotes II LLS (collectively, "Yieldstreet"), and Michael Weisz ("Weisz," and together with Yieldstreet, "Defendants"), alleging three causes of action stemming from alleged monetary loss after Plaintiffs invested in Defendants' security offerings. (See "Complaint," Dkt No. 4). Now before the Court is Defendants' premotion letter for dismissal of the Complaint (see "Motion," Dkt. No. 23.), which the Court construes as a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule")

12(b)(6).[1] For the reasons discussed below, Defendants' Motion is granted in part and denied in part.

## I.   **BACKGROUND**

A.   FACTUAL BACKGROUND[2]

Defendant Yieldstreet is an investment company that offers innovative investment products to accredited investors. Yieldstreet offers investors access to their investment products, mainly debt instruments, through an online investment portal which displays products that Yieldstreet has prescreened and selected for sale on its platform. Weisz is the president and co-founder of Yieldstreet. Plaintiffs are all individual investors in Yieldstreet's investment products.

Yieldstreet's investment-product portfolio is largely made up of debt instruments known as borrower payment dependent notes ("BPDNs"), or debt obligations tied to the performance of a specific underlying loan made by a Yieldstreet created special purpose vehicle ("SPV") formed in

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The factual background below, except as otherwise noted, derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the Complaint or the documents referred to therein.

connection with the offering. In essence, the SPV raises funds from investors through Yieldstreet and then lends the funds raised to an undisclosed borrower in the industry advertised by Yieldstreet for that particular BPDN. In the investor's ideal world, that borrower would then use the funds to buy a specific asset that generates funds sufficient to repay the SPV, including interest, ultimately generating a profit for investors in the BPDN.

Yieldstreet does not offer its investors access to the underlying data or risk-assessment analysis for any particular investment on the Yieldstreet platform. Investors are instead reliant on Yieldstreet's due diligence in selecting the borrower and potential investment. Investors are also reliant on Yieldstreet's transparency in transmitting any material information to potential investors in the summary of the investment opportunity.

Plaintiffs contend that Yieldstreet has not been transparent in its communications to potential investors. Plaintiffs allege that Yieldstreet misrepresented material facts about the stability and attractiveness of their investment products. Specifically, Plaintiffs claim that Yieldstreet made false statements in Yieldstreet's April 5, 2018 ("ALTNOTES I") and January 16, 2019 ("ALTNOTES II") private placement memoranda. As one general example,

Plaintiffs allege that Yieldstreet falsely told its investors "that none of the investments offered on YieldStreet's online platform had ever lost any principal." (Complaint ¶ 50.) In addition to more general statements, Plaintiffs contend that certain classes of investments were offered subject to numerous false or misleading statements.

    1.   <u>Vessel Deconstruction Funds</u>

After ALTNOTES I was distributed to investors, Yieldstreet began offering a "Marine Finance" line of investment products. These deals were largely vessel-deconstruction transactions in which the SPV lent the investor-generated balance to a borrower who would purchase a particular vessel for deconstruction with the goal of selling the scrap for profit.

Plaintiffs allege that the vessel deconstruction industry is a particularly volatile one requiring a high degree of industry knowledge to successfully navigate. For example, Plaintiffs allege that "the deconstruction process can proceed across multiple continents, sometimes in developing nations that lack stable infrastructures. As a result, the process is often complicated, and slowed, by external factors ranging from catastrophic weather conditions to civil turmoil." (<u>Id.</u> ¶ 60.) Thus, prior to Yieldstreet, Plaintiffs allege individual investors could not passively

invest in this industry which otherwise required "significant capital beyond the reach of most any individual investor; an extensive network of contacts; expertise in vetting the vessel purchase itself; an ability to structure a deal that adequately accounts for typical industry risks while still preserving the opportunity for a return on investment; and, critically, an ability to deal with the externalities that can and will arise during the demolition process." (Id. ¶ 61).

Plaintiffs allege Yieldstreet induced investors to invest in this volatile industry though false or misleading statements regarding their three-step vetting process for the vessel-deconstruction funds. In the first step, Yieldstreet represented that they relied on Global Marine Transport Capital ("Global Marine") to identify potential vessel-deconstruction opportunities. Global Marine purportedly had expertise in the industry, lending experience, and the contacts necessary to identify attractive investments.

Deals that survived Global Marine's vetting went on the second step, which purportedly included an independent analysis of the investment opportunity by Yieldstreet's credit committee. This independent assessment included examining "the background and experience of the borrower; necessary collateralization of the loan to protect investors

against default; and appropriate structuring for the
borrower's particular industry." (Id. ¶ 72.) Plaintiffs
contend that neither the first nor second step were performed
as promised and that key facts developed through steps one
and two of the vetting process were then omitted or
misrepresented to potential investors during the third step,
the "investor education" phase.

Specifically, Plaintiffs allege that after the high
demand for Yieldstreet's first vessel-deconstruction
offering, Yieldstreet abandoned the industry-standard model
for loans in this space -- revolving credit facilities with
one-to-four year lifespans -- for much higher-risk short-term
loans, a model championed by Weisz. Plaintiffs allege that
the industry-standard loans make sense in this space and
result in more stable and successful investments, but
Yieldstreet moved away from that model because it did not
generate large management fees. Instead, the high-risk short-
term model brought more lucrative fees for Yieldstreet.

Plaintiffs allege that Global Marine advised Weisz that
this short-term lending model was a structural mismatch for
vessel deconstruction and that the short time-frame to pay
back these loans was impractical in such a volatile industry
subject to unavoidable externalities and delays. Weisz
ignored this advice. In October 2018, Weisz flew to Dubai for

a closed-door meeting with the North Star Group ("North Star"), the borrowers on Yieldstreet's initial vessel-deconstruction offering. Global Marine was not invited and did not attend. At this meeting, Weisz and North Star agreed to future investments, concentrated through North Star, using the short-term lending model.

In late 2018, Global Marine again warned Weisz of the risks associated with a short-term loan structure and further warned Weisz that this risk was magnified by funneling those products through a single borrower: North Star. Global Marine was familiar with North Star and therefore well-positioned to opine on the risks of over-exposure. Weisz again ignored this advice.

In a series of new vessel-deconstruction offerings, Yieldstreet used this new, short-term lending model. Plaintiffs contend that this series of events rendered a number of the disclosures in the private placement memoranda false or misleading. Specifically, Plaintiffs contend the following information was either false, misleading, or omitted from the offering documents:

- Yieldstreet was using an unproven lending model.
- The asset-class experts (Global Marine) so prominently highlighted in those documents had explicitly warned against using that model.

7

- Weisz would act as a one-man credit committee.

- Weisz lacked experience in Marine Vessel Deconstructing financing.

- All of the investment products were being concentrated with the same borrower group.

- Yieldstreet, while disclosing other instances of inexperience, did not disclose that its team did not have the experience necessary to vet and structure a vessel-deconstruction loan -- and in fact, had never been involved in any such loans before joining Yieldstreet.

Plaintiffs allege that the foregoing were material facts and should have been disclosed when forming and marketing five vessel deconstruction investment opportunities from December 18, 2018 to September 11, 2019.

Plaintiffs allege that in March 2020, the investments went into default as a result of the overleveraged borrower (presumably North Star) being unable to repay the short-term loans. Now, Plaintiffs allege $90 million in these vessel-deconstruction loans are in default. Defendants dispute that these investments are in default.

2.  Other Yieldstreet Investments

Plaintiffs allege that the vessel-deconstruction loans represent only a small portion of Yieldstreet's portfolio,

and other portions of that portfolio were similarly
misleading, risky, and ultimately led to default. For
example, Plaintiffs allege that a Louisiana Oil and Gas fund,
formed under ALTNOTES I, lent money for the purchase of an
oil and gas well. The offering documents stated that "current
production is approximately 13.5M cubic feet of gas
equivalent per day (mmcf/day) or 2.2k barrels of oil
equivalent (BOE) from 21 producing O&G wells." (Id. ¶ 114.)
Plaintiffs allege this was false, and Yieldstreet itself
stated "in September 2018, production volume was nearly half
[its projection]: 11.3 million cubic feet per day." (Id. ¶
115.) Plaintiffs claim that this misrepresentation was
material because production volume generates the cash flow,
which in turn supports repayment of the loan.

Just as with the vessel-deconstruction loans, Plaintiffs
again allege that the Louisiana Oil and Gas fund suffered
from a similar mismanaged and misrepresented vetting process
that resulted in incomplete and incorrect date informing the
investment. The fund is also now in default.

B.   PROCEDURAL BACKGROUND

On September 10, 2020, Plaintiffs filed the instant
Complaint on behalf of themselves and all those persons who
purchased BPDNs subject to ALTNOTES I and ALTNOTES II in one
of Yieldstreet's defaulted funds from 2018 to present. By

letter dated November 20, 2020, Defendants informed Plaintiffs of alleged deficiencies in the Complaint and noted their intent to move to dismiss. (<u>See</u> Dkt. No. 24-1.) By letter dated December 11, 2020, Plaintiffs responded Defendant's letter. (<u>See</u> Dkt. No. 24-2.)

Unable to come to an agreement, Defendants wrote to the Court on January 8, 2021 outlining the dispute and requesting leave to file a motion to dismiss. (<u>See</u> Motion.) On January 28, 2021, the Court directed Plaintiffs to respond to the arguments raised Defendants' January 8 letter. (<u>See</u> Dkt. No. 25.) Plaintiffs submitted a response on February 5, 2021. ("Opposition," Dkt. No. 26.) Defendants replied on February 12, 2021, including various declarations and exhibits for the Court's consideration. (<u>See</u> "Reply," Dkt Nos. 27-31.) Plaintiffs filed a sur-reply on February 16, 2021. ("Sur-reply," Dkt. No. 33.) The Court has considered each of these submissions in connection with this Decision and Order.

C.   <u>THE PARTIES' ARGUMENTS</u>

Defendants argue that, as a threshold matter, Plaintiffs lack Article III standing because the notes in which they invested are not in default, and therefore, Plaintiffs have not yet suffered loss. Second, Defendants contend that the Delaware Securities Act, under which Plaintiffs bring two of their three claims, does not govern Plaintiffs' investments.

Third, Plaintiffs' Delaware Section 73-605(a) claims against Yieldstreet Inc. and Yieldstreet Management fail because the Complaint does not show either entity offered or sold the securities at issue. Fourth, Defendants claim that Yieldstreet Management did not owe Plaintiffs any fiduciary duty. Fifth, Defendants argue that the Complaint does not identify material misrepresentations or omissions for the majority of the investments they claim were improper. And finally, Plaintiffs lack class standing to assert claims regarding investment offerings in which no named plaintiff actually invested.

Plaintiffs respond that they have adequately pled their claims, including allegations regarding Yieldstreet's investments generally and the vessel-deconstruction and oil-and-gas fund specifically. Plaintiffs contend that they have standing because their suit is for recission, which is not premised on the securities being in default. Next, Plaintiffs argue Delaware law applies because a "substantial nexus" to Delaware exists in the formation, offering, and sale of the various securities. Plaintiffs argue that Yieldstreet Inc. and Yieldstreet Management offered or sold the securities under Section 73-605(a) because they successfully solicited their sale and were motivated by a desire to serve their own interests. Plaintiffs further argue that Yieldstreet

Management had a fiduciary duty to Plaintiffs as a registered investment advisor and conveyed analysis and recommendations through various documents.

## II.  STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Federal Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the Court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in

Plaintiffs' favor. <u>See</u> <u>Chambers</u>, 282 F.3d at 152 (citing <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2011)).

### III.   <u>DISCUSSION</u>

A.   <u>STANDING</u>

First, the Court will address the threshold issue of standing. Defendants argue that Plaintiffs lack standing to bring this lawsuit because their investments are not in default, and therefore they have suffered no injury. Plaintiffs respond that their claims, which are for recission, do not require the investments to be in default. The Court is persuaded that Plaintiffs have standing to assert claims for recission.

While it does seem from the material presented to the Court that these investments do not yet appear to be in default, as active collection is ongoing for many of the BDPNs, ultimately this fact does not defeat standing. Both federal and state securities laws contemplate recission as a remedy for violations. <u>See</u> <u>Randall v. Loftsgaarden</u>, 478 U.S. 647, 655-56 (1986); <u>Commercial Union Assur. Co., plc v.</u> <u>Milken</u>, 17 F.3d 608, 615 (2d Cir. 1994); <u>see</u> <u>also</u> Del. Code § 73-605(a)(2). Plaintiffs both implicitly and expressly seek rescissory damages. (<u>See</u> Complaint ¶¶ 157, 166 & Page 41.) This is sufficient to confer standing. <u>Commercial Union</u>, 17 F.3d at 615; <u>Dornberger v. Metro. Life Ins. Co.</u>, 961 F. Supp.

506, 543 (S.D.N.Y. 1997); <u>Lenz v. Associated Inns & Rests.</u>
<u>Co. of Am.</u>, 833 F. Supp. 362, 370 (S.D.N.Y. 1993).

The Court agrees with Defendants that any amount of
recovery on these investments will work to offset the amount
of damages Plaintiffs may ultimately recover in this action.
Indeed, the action may eventually be dismissed because there
are no damages. <u>See</u> <u>Commercial Union</u>, 17 F.3d at 615. But at
this stage, Plaintiffs have adequately pled an injury such
that standing exists.

B.   <u>APPLICATION OF DELAWARE LAW</u>

The Court now turns to a second threshold issue raised
in Defendant's Motion: the application of Delaware law. There
is "a presumption that a law is not intended to apply outside
the territorial jurisdiction of the State in which it is
enacted. . . and that principle is applicable to a Blue Sky
Law." <u>See</u> <u>Singer v. Magnavox Co.</u>, 380 A.2d 969, 981 (Del.
1977), <u>overruled on other grounds by</u> <u>Weinberger v. UOP, Inc.</u>,
457 A.2d 701, 705 (Del. 1983). In order for Delaware
securities law to apply here, there must be a sufficient nexus
between the transactions at issue and the state. <u>Id.</u> The Court
is not persuaded that a sufficient nexus exists between the
transactions at issue and Delaware.

Plaintiffs rest their argument that Delaware law applies
on three allegations: (1) the security purchases at issue

14

require the involvement of a Delaware trustee "in virtually every aspect of Yieldstreet's secured note offerings" subject to an indenture agreement; (2) the Yieldstreet companies are incorporated in Delaware; and (3) the Subscription Agreement includes a Delaware choice-of-law provision. (See Opposition at 3.) But these three allegations, even in tandem, do not amount to the nexus required.

First, Delaware law makes clear that the incorporation in Delaware does not subject a corporation to suit under Delaware Blue Sky laws. FdG Logistics LLC v. A&R Logistics Holdings, Inc., 131 A.3d 842, 855-56 (Del. Ch. 2016) ("The sole connection that [Plaintiff] can draw to Delaware -- that the merger parties were incorporated here -- is insufficient under Singer and its progeny to demonstrate the required nexus."); see also SEC v. Bronson, 756 F. App'x 38, 40 (2d Cir. 2018). Second, a choice-of-law provision in a contract related to the security sale at issue does not allow for the extraterritorial application of Delaware's Blue Sky Laws. Eurofins Panlabs, Inc. v. Ricerca Biosciences, LLC, No. 8431, 2014 WL 2457515, at *18 (Del. Ch. May 30, 2014); see also FdG Logistics, 131 A.3d at 855-56.

Finally, although Defendants allege that the Delaware trustee is involved in many parts of the actual function and disbursement of the securities at issue, there are no

allegations in the Complaint pertaining to the trustee itself. The trustee is not named as a party, and there is no allegation that the trustee acted inappropriately. Further, the trustee's involvement with these securities is subject to an indenture agreement that is not alleged to contain any of the misrepresentations that give rise to this suit. Thus, while the trustee might be relevant to day-to-day practical aspects of offering the security, it has essentially no relevance to the instant lawsuit. See FdG Logistics, 131 A.3d at 857 (finding relevant that "none of the allegedly underlying fraudulent business practices or violations is alleged to have occurred in Delaware"). Thus, the fact that the trustee is a Delaware company is insufficient to establish the necessary nexus.

Because the Court has determined that Delaware law does not apply to this action, Counts I and II are dismissed without prejudice. The Court does not reach the parties' remaining arguments as to the substance of these counts.

C.   FIDUCIARY DUTY

Plaintiffs bring a claim for breach of fiduciary duty against only Yieldstreet Management. Defendants argue this claim should be dismissed because Yieldstreet Management did not owe Plaintiffs any fiduciary duty. Yieldstreet Management is alleged to be a registered financial advisor, and therefore

does owe its clients fiduciary duties. (See Complaint ¶¶ 31, 176.) The relevant question therefore is whether Plaintiffs have adequately alleged that they are clients of Yieldstreet Management such that they are owed a duty.

"The existence of a fiduciary duty is a question of fact that depends on the circumstances, principally the nature of the advice given." Saunwin Int'l Equities Fund LLC v Donville Kent Asset Mgmt. Inc., No. 17 Civ. 11585, 2018 WL 3543533, at *11 (D. Mass. July 20, 2018). Generally, an investment advisor owes a fiduciary duty to a person if the advisor "provide[s] personalized advice attuned to a client's concerns, whether by written or verbal communication." Lowe v. SEC, 472 U.S. 181, 208 (1985).

While the Court is skeptical that Yieldstreet Management owed a fiduciary duty to Plaintiffs, at this early stage of the litigation the Court is persuaded it is at least plausible. In SEC v. Lauer, the Sixth Circuit concluded that a hedge fund manager owed a fiduciary duty to investors "when he suggested in the Funds' newsletter that his market strategy could beat market returns." 478 F. App'x 550, 557 (6th Cir. 2012). Here, Plaintiffs have similarly alleged that Yieldstreet Management authored publications touting the economic benefits of the investment products and encouraging members of the public to invest. (See Complaint ¶¶ 44-46,

178.) A full exploration of the relationship between Yieldstreet Management and Plaintiffs, including the specific communications made by Yieldstreet Management, if any, may show a lack of "personalized advice" such that no fiduciary duty was owed. However, at this initial stage, the claim remains plausible based on the Complaint's allegations. Dismissal of this claim is therefore inappropriate.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Yieldstreet Inc., Yieldstreet Management LLC, YS Altnotes I LLC, YS Altnotes II LLS, and Michael Weisz pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure (<u>see</u> Dkt No. 24) is **DENIED IN PART** and **GRANTED IN PART** as set forth above. In particular, Counts I and II are **DISMISSED** without prejudice, but Count III remains; and it is further hereby

**ORDERED** that Plaintiffs either file an amended complaint or notify the Court that it wishes to rest on the complaint as filed within twenty (20) days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
       26 April 2021

Victor Marrero
U.S.D.J.