UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL TECKU; DAVID FINKELSTEIN; and LAWRENCE TJOK; Individually and on behalf of all others similarly situated<br><br>*Plaintiffs,*<br><br>v.<br><br>YIELDSTREET, INC.; YIELDSTREET MANAGEMENT, LLC; YS ALTNOTES I, LLC; YS ALTNOTEES I, LLC; AND MICHAEL WEISZ.<br><br>*Defendants.* | CIVIL ACTION<br><br>No. 1:20-CV-07327<br><br>JUDGE VICTOR MARRERO |

**MICHAEL TECKU, DAVID FINKELSTEIN and LAWRENCE TJOK'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL**

**MAY IT PLEASE THE COURT:**

Plaintiffs Michael Tecku, David Finkelstein, and Lawrence Tjok ("Movants") respectfully submit this Memorandum of Law in Support of their *Motion For Appointment As Lead Plaintiffs And Approval Of Counsel* seeking entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1) appointing Movants as lead plaintiffs for the class of all persons who purchased a Borrower Payment Dependent Note (BPDN) issued by YS ALTNOTES I or YS ALTNOTES II in connection with the following offerings: Vessel Deconstruction I; Short Term Vessel Refinancing Fund;

1

Vessel Deconstruction Fund III; Vessel Deconstruction Fund IV; Vessel Deconstruction Fund VI; and Louisiana Oil & Gas; and

(2) approving Movants' selection of Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf") and Sonn Law Group PA and Jeffrey Sonn ("Sonn Law Group") as counsel for the Class.

## INTRODUCTION AND BACKGROUND

Plaintiffs Michael Tecku, David Finkelstein, and Lawrence Tjok, on behalf of themselves and all others similarly situated (previously defined as "Movants") brought this action against Yieldstreet Inc., Yieldstreet Management LLC ("Yieldstreet Management"), YS ALTNOTES I LLC ("ALTNOTES I"), YS ALTNOTES II LLC ("ALTNOTES II") (collectively, "Yieldstreet"), and Michael Weisz ("Weisz," and together with Yieldstreet, "Defendants"), alleging seven causes of action stemming from monetary losses incurred after Movants invested in Defendants' investment products.

As this Court succinctly laid out in its May 3, 2022 Order denying Defendants' Motion to Dismiss:

> Defendant Yieldstreet Inc. is an investment company that offers innovative investment products to accredited investors. Yieldstreet Inc. offers investors access to their investment products, mainly debt instruments, through an online investment portal which displays products that Yieldstreet Inc. has prescreened and selected for sale on its platform. Yieldstreet Inc. markets itself as an "investor- first" company which acts as the investor's "partner." (CAC ¶¶ 39-40.) Yieldstreet Inc. has subsidiaries that include Yieldstreet Management, an investment advisor registered with the Securities Exchange Commission, and ALTNOTES I and ALTNOTES II (together with ALTNOTES I, the "ALTNOTES entities"). To the investing public, Yieldstreet, Inc. and its subsidiaries operate as a cohesive whole under the moniker "Yieldstreet." Weisz is the president and co-founder of Yieldstreet Inc. and its subsidiaries. In his capacity, Weisz exercises complete control over Yieldstreet's investment decisions. Plaintiffs are all individual investors in Yieldstreet's investment products.

Yieldstreet's investment-product portfolio consists largely of debt instruments known as borrower payment dependent notes ("BPDNs"). These investment products comprise debt obligations tied to the performance of a specific underlying loan made by a Yieldstreet created special purpose vehicle ("SPV") formed in connection with the offering. In essence, the SPV raises funds from investors through Yieldstreet and then lends the funds raised to an undisclosed borrower in the industry advertised by Yieldstreet for that particular BPDN. All BPDNs are issued by the ALTNOTES entities on behalf of the SPVs. In the investor's ideal world, that borrower would then use the funds to buy a specific asset that generates funds sufficient to repay the loan, including interest, by the specified maturity date, ultimately generating a profit for investors in the BPDN.

Yieldstreet Management is solely responsible for making decisions as to which products it will offer for sale on the Yieldstreet platform. Yieldstreet Management also operates under the business name "Yieldstreet." Yieldstreet Management receives fees commensurate with the outstanding capital contribution balance for each SPV.

Yieldstreet does not offer its investors access to the underlying data or risk-assessment analysis for any particular investment on the Yieldstreet platform. Investors rely instead on Yieldstreet's due diligence in selecting the borrower and potential investment. Investors also rely on Yieldstreet's transparency in transmitting any material information to potential investors through offering documents which include applicable Series Note Supplements ("SNS"), private placement memoranda, and indentures.

Plaintiffs contend that Yieldstreet has not been transparent in its communications to potential investors. Plaintiffs allege that Yieldstreet misrepresented material facts about the stability and attractiveness of their investment products in its offering documents. Specifically, Plaintiffs claim that Yieldstreet made false statements in Yieldstreet's April 5, 2018 and January 16, 2019 private placement memoranda ("ALTNOTES I PPM" and "ALTNOTES II PPM," respectively, and collectively, the "PPMs"). As one example, Plaintiffs allege that Yieldstreet falsely told its investors via the PPMs that "none of the investments offered on Yieldstreet's online platform had ever lost any principal."

Specifically, Plaintiffs allege that after the high demand for Yieldstreet's first vessel-deconstruction offering, in October 2018 Yieldstreet abandoned the industry-standard model for loans in this space -- revolving credit facilities with one-to-four-year lifespans -- for much higher-risk short-term loans, a model conceptualized and championed by Weisz. Plaintiffs allege that Global Marine advised Weisz that this short-term lending model was a structural mismatch for vessel deconstruction and that the short timeframe to pay back these loans was impractical in such a volatile industry subject to unavoidable externalities and delays. According to Plaintiffs, the industry-standard loans purportedly make sense in this space and result in more stable and successful investments, but Yieldstreet moved away from that model because it did not generate large management fees. Instead, the high-risk short-term model brought more lucrative fees for Yieldstreet.

In October 2018, Weisz flew to Dubai for a closed-door meeting with the North Star Group ("North Star"), the borrowers on Yieldstreet's initial vessel-deconstruction offering, to discuss the short-term lending concept. Global Marine was not invited and did not attend. At this meeting, Weisz and North Star agreed to future investments, concentrated through North Star, using the short-term lending model.

In late 2018, Global Marine again warned Weisz of the risks associated with a short-term loan structure and further warned Weisz that such risk was magnified by funneling those products through a single borrower: North Star. Plaintiffs assert that Global Marine was familiar with North Star and, therefore, was well-positioned to opine on the risks of over-exposure, and that Weisz again ignored Global Marine's advice.

In a series of new vessel-deconstruction offerings from December 2018 through September 2019, Yieldstreet used the new, short-term lending model. Plaintiffs contend that the series of events described above rendered statements in the SNS for these new offerings false or misleading. Specifically, Plaintiffs allege that the following information was either false, misleading, or omitted from the offering documents for the five vessel deconstruction investment opportunities offered between December 18, 2018 to September 11, 2019:

- Yieldstreet was using an unproven lending model;
- The asset-class experts (Global Marine) so prominently highlighted in those documents had explicitly warned against using that model;
- Weisz would act as a one-man credit committee;
- Weisz lacked experience in Marine Vessel Deconstructing financing;
- All of the investment products were being concentrated with the same borrower group; and
- Yieldstreet, while disclosing other instances of inexperience, did not disclose that its management team did not have the experience necessary to vet and structure a vessel-deconstruction loan -- and in fact, had never been involved in any such loans before joining Yieldstreet.

Plaintiffs allege that in March 2020, the investments went into default as a result of the overleveraged borrower (presumably North Star) being unable to repay the short-term loans. Now, Plaintiffs allege $90 million in these vessel-deconstruction loans are in default. Defendants dispute that these investments are in default.

*See* ECF No. 52, Order Denying Defendants' Motion to Dismiss at pp 3-10 (May 3, 2022).[1]

---

[1] This is an excerpt from the full summary provided in the Court's Order, which is incorporated by reference as if set forth in full herein.

On the basis of these and other misrepresentations and omissions, Movants, on behalf of themselves and all others similarly situated, seek to rescind their investments in YieldStreet's Vessel Deconstruction Fund I; Short Term Vessel Refinancing Fund; Vessel Deconstruction Fund III; Vessel Deconstruction Fund IV; Vessel Deconstruction Fund VI; and Louisiana Oil & Gas Fund, and to recover all other damages available to them under applicable law.

Movants now file this motion seeking appointment as lead plaintiffs to represent the class under the PSLRA, and further approving their selection of Peiffer Wolf and Sonn Law as co-counsel to represent the class.

## ARGUMENT

**I.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS**

*A.    Timeline*

On September 10, 2020, Movants filed the above-captioned action in this District. Thereafter, YieldStreet moved to dismiss the complaint in its entirety.

On April 26, 2021, the Court entered an Order granting that motion in part, denying it in part, and providing Movants with leave to file an amended complaint, *see* ECF No. 34.

On May 17, 2021, Movants filed their amended complaint asserting for the first time claims under the federal securities laws.

On August 20, 2021, the Court granted Movants' unopposed motion to correct that complaint. *See* ECF No. 44 (hereafter, that corrected complaint is referred to the "CAC").

On September 9, 2021, Movants published notice of this lawsuit describing the claims asserted herein and providing the purported class definition, and further advising members of the putative class of their right to file a motion to serve as lead plaintiff(s) within 60 days after the date on which the notice was published. *See* Exhibit 1, hereafter, "Notice"; *see also* 15 U.S.C. § 78u-

4(a)(3)(A). No member of the class filed a motion to serve as lead plaintiff in response to that Notice.

On May 3, 2022, the Court issued an Order denying Defendants' Motion to Dismiss Movants' claims, including their claims asserted under Rule 10b5.

B.     *Movants are Presumed to be the Most Adequate Plaintiffs*

Movants, the named Plaintiffs who filed the CAC in this action, are qualified and have standing to move to be named lead plaintiffs at this time.[2] Each Movant has filed certifications attesting that they are willing to serve as a representative of the class and to provide testimony at deposition and trial, if necessary. *See* ECF Doc. No. 43-1 at pages 57 – 62, attached hereto as Exhibit 2; *see also* 15 U.S.C. § 78u-4(a)(2)(A).

Under the PSLRA, the "most adequate plaintiff[s]" shall be appointed as lead plaintiffs to represent a class. The Act provides a "rebuttable presumption" that the most adequate plaintiffs are those who:

> (aa) ha[ve] either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the Court, ha[ve] the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[2] *See, e.g.*, *Gutman v. Sillerman*, No. 15 CIV. 7192 (CM), 2015 WL 13791788, at *2–3 (S.D.N.Y. Dec. 8, 2015) ("The party who files 'the' complaint does not need to make a motion – he is automatically to be considered for lead plaintiff status – but everyone else who wants that honor must file a motion within 60 days."); *Coopersmith v. Lehman Bhd., Inc.*, 344 F. Supp. 2d 783, 790–91 (D. Mass. 2004) ("The PSLRA does not limit lead plaintiffs to those who have filed motions within 60 days of the publication of the notice. Rather, those presumed most adequate to serve as lead plaintiffs include either those who have filed a complaint *or* those who made a motion for appointment within the 60 day period.") (15 U.S.C. § 78u–4(B)(iii)(I)(aa).)

6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movants satisfy each of these elements. As set forth above, they filed the operative complaint in this matter. And while the PSLRA offers no guidance as to how to measure which proposed plaintiff has the "largest financial interest," "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005). In this case, Movant David Finkelstein lost over $150,000.00, and Movants Michael Tecku and Lawrence Tjok each lost over $100,000.00. *See* Ex. 2. No other individual claiming to have suffered greater losses sought appointment as a Lead Plaintiff in this litigation. Moreover, the amounts that Movants lost are substantial for a class comprised entirely of individual retail investors, and therefore the selection of Movants as lead plaintiffs is consistent with one of the "principal legislative purposes of the PSLRA, namely, to ensure that the securities class actions would be controlled by plaintiffs with real financial interests in the integrity of the market rather than by lawyers." *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

In addition to possessing the largest financial interest in the outcome of the litigation, proposed lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(cc). In making this determination, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movants will satisfy the requirements of Rule 23 is sufficient. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

7

The typicality requirement is satisfied when the lead plaintiffs' claims arise from the same events, practices or courses of conduct that give rise to other class members' claims and are based on the same legal arguments. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). These requirements are met here. Movants here seek to rescind their investments in various vessel deconstruction funds and YieldStreet's "Louisiana Oil & Gas" fund on the basis of the same omissions and misrepresentations of material information, and one or more of the Movants invested in each of the funds for which the complaint seeks rescission on a class-wide basis. *See* CAC at ¶¶ 142-147.

The adequacy analysis is satisfied where it is established that the proposed lead plaintiffs have the ability to represent the claims of the class vigorously, have obtained adequate counsel, and that there is no conflict between a potential representatives' claims and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001). Here, Movants sustained substantial financial losses from investments in Yieldstreet investment products and are extremely motivated to pursue claims seeking to recover those investments, as evidenced in part by their seeking appointment as lead plaintiffs. Movants retained competent, experienced counsel to pursue this case as set forth in more detail *infra*. Finally, the allegations in the CAC and representations in Movants' certifications filed with the CAC establish that their interests are fully aligned with—and by no means antagonistic to—the interests of the Class. *See In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 U.S. Dist. LEXIS 81205, at *14 (N.D. Cal. Sept. 8, 2009) (movant's certification evidenced adequacy to serve as lead plaintiff); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *34 (D. Idaho Feb. 24, 2011) (same). On these bases, Movants submit that they have made a *prima facie* showing that they will satisfy the requirements of Rule 23.

C.  *The Presumption that Movants are the Most Adequate Plaintiffs Has Not Been Rebutted*

For the reasons set forth above, Movants have satisfied the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and are presumed to be the most adequate lead plaintiffs in this action. The presumption in favor of appointing Movants as lead plaintiffs may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiffs:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

No member of the putative class has attempted to make this showing. Moreover, Movants are not aware of any reason why they could not fairly and adequately protect the interests of the class, and do not believe that their claims are subject to unique defenses that would render them incapable of adequately representing the class. Accordingly, Movants respectfully submit they have established that they are the most adequate lead plaintiffs in this case.

## II.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiffs to select and retain class counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015). "While the appointment of counsel is made subject to the approval of the court, the PSLRA clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 734 (9th Cir. 2002). The Court should only interfere with lead plaintiffs' selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants retained Peiffer Wolf and Sonn Law Group as their counsel and now move to have those firms appointed as lead counsel for the Class. These firms have already dedicated significant time, expense, and effort toward investigating Movants' and the Class's claims and are committed to prosecuting those claims zealously as evidenced by the record to date. As reflected in more detail in the enclosed resumés, these firms routinely handle high-stakes litigations. They have an extensive history of generating significant recoveries for investors (and others) in class and individual actions; currently represent clients in a number of mass and putative class actions arising out of violations of state and federal securities laws and others; have been appointed as class counsel in class actions in this and other courts throughout the nation[3]; are well-versed in federal practice; and have ample resources in the form of personnel and otherwise. *See* Exhibits 3-4 (Declaration of Daniel Centner and Peiffer Wolf firm resumé) and Exhibits 5-6 (Declaration of Jeffrey Sonn and Sonn Law Group resumé).

Movants' counsel have the skill and knowledge to prosecute this action effectively and expeditiously and are well-qualified to represent the Class. On these bases, Movants respectfully request that Peiffer Wolf and Sonn Law Group be appointed as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movants as lead plaintiffs to represent the proposed Class; (2) approving Movants' selection of Peiffer Wolf Carr Kane Conway & Wise LLP and Sonn Law Group PA as lead counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

---

[3] Peiffer Wolf was just appointed lead counsel under the PSLRA in another matter pending before this Court. *See Gomez v. Credit Suisse*, No. 22-cv-00115, at Doc. No. 17.

Dated: May 25, 2022

Respectfully submitted,

By: */s/Daniel Centner*
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP,**
Daniel B. Centner
Joseph Peiffer
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Telephone: (504) 523-2434
Facsimile: (504) 608-1465
jpeiffer@peifferwolf.com
dcentner@peifferwolf.com

Jason J. Kane
95 Allens Creek Bldg. 1, Suite 150
Rochester, NY 14618
Telephone: (585) 310-5140
Facsimile: (504) 608-1465
jkane@peifferwolf.com

**SONN LAW GROUP, P.A.**
Jeffrey R. Sonn, Esq.
Adolfo J. Anzola, Esq.
One Turnberry Place
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180
Telephone: (305) 912-3000
Facsimile: (786) 485-1501
jsonn@sonnlaw.com
aanzola@sonnlaw.com
service@sonnlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

### CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May, 2022, a copy of the foregoing was served on all counsel of record through operation of the Court's CM/ECF filing system.

    */s/Daniel Centner*