UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL TECKU, et al.,

                         Plaintiffs,

            - against -

YIELDSTREET, INC., et al.,

                         Defendants.

20 Civ. 7327 **(VM)**

DECISION AND ORDER

---

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Michael Tecku ("Tecku"), David Finkelstein ("Finkelstein"), and Lawrence Tjok ("Tjok," and together with Tecku and Finkelstein, "Plaintiffs") move the Court to (1) appoint them as lead plaintiffs in this action; and (2) approve their choice of co-lead counsel for the putative class. (See "Motion," Dkt. No. 55.) For the reasons stated below, Plaintiffs' Motion is DENIED in part and GRANTED in part.

## I.   BACKGROUND

The claims in this action arise out of alleged violations of the federal securities laws by Yieldstreet Inc., its subsidiaries Yieldstreet Management LLC, YS Altnotes I LLC, and YS Altnotes LLC (collectively with Yieldstreet Inc., "Yieldstreet"), and the president and co-founder of Yieldstreet, Michael Weisz ("Weisz," and together with Yieldstreet, "Defendants").

1

Yieldstreet is an investment company that offers investors access to their investment products, mainly debt instruments known as borrower payment dependent notes ("BPDNs"), through an online investment portal which displays products that Yieldstreet Inc. has prescreened and selected for sale on its platform. The Complaint alleges that in its offering documents Yieldstreet has misrepresented material facts about the stability and attractiveness of its investment products.

On September 10, 2020, plaintiffs Adrienne Cerulo ("Cerulo"), Finkelstein, Tecku, and Tjok filed a complaint, individually and behalf of all others similarly situated, alleging violations of Delaware law. (See Dkt. No. 4.) On April 26, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the complaint, holding that Delaware law does not apply to this action. (See Dkt. No. 34.)

On May 17, 2021, Cerulo, Finkelstein, Tecku, and Tjok filed an amended complaint alleging that Defendants' conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as well as New York law. (See Dkt. No. 35.) Thereafter, on August 18, 2021, Finkelstein, Tecku, and Tjok (collectively, "Plaintiffs") moved unopposed to correct the amended

2

complaint to remove Cerulo, who no longer wanted to represent the putative class or be identified by name in the complaint. (See Dkt. No. 43.) The Court granted their request.

Plaintiffs filed the operative Corrected Amended Complaint ("CAC"), removing Cerulo, on March 31, 2022. (See CAC, Dkt. No. 51.) On May 3, 2022, the Court denied Defendants' motion to dismiss the CAC. (See Dkt. No. 52.) The Motion to Appoint Lead Plaintiffs and Counsel followed on May 25, 2022. As a part of this Motion, Plaintiffs filed a copy of a notice dated September 9, 2021, published on www.businesswire.com. (See "Notice," Dkt. No. 55-1.) Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Notice informs potential class members of the existence of the action and the requirement that any member of the purported class intending to serve as lead plaintiff must move the Court not later than 60 days from the date of publication. As of the date of this Decision and Order, no other member of the purported class has moved the Court to serve as lead plaintiff.

## II.   <u>LEGAL STANDARDS</u>

The PSLRA provides the standard for selecting a lead plaintiff in class actions brought pursuant to the Securities Exchange Act. As a procedural matter, the PSLRA directs that once a complaint is filed, within twenty days "the plaintiff

3

or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class," including the claims asserted and the purported class period. 15 U.S.C. § 78u-4(a)(3)(A)(i). No later than 60 days after the publication of this notice, any member of the purported class may move to serve as lead plaintiff of the class. See id.

The PSLRA directs courts to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA also instructs that the presumptively "most adequate plaintiff" to serve as lead plaintiff is the movant who has (1) filed the complaint or made a timely motion to be appointed in response to a notice; (2) has the "largest financial interest"; and (3) makes a preliminary showing that such plaintiff satisfies the Rule 23 requirements for class representative. See Balestra v ATBCOIN LLC, No. 17 Civ. 10001, 2019 WL 1437160, at *11 (S.D.N.Y. Mar. 31, 2019) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). This presumption may be rebutted upon a showing that the presumptive "most adequate plaintiff" either "will not fairly and adequately protect the interests of the class," or (b)

"is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### III.   <u>DISCUSSION</u>

A. <u>PLAINTIFFS' GROUP MOTION</u>

As an initial matter, the Court notes that Plaintiffs filed their Notice more than twenty days after the Corrected Amended Complaint was filed. The Notice otherwise meets the requirements of the PLSRA, and potential class members have received ample time to move for appointment as lead plaintiff since the Notice was published. Since Plaintiffs jointly filed the operative complaint in this action, they satisfy the first requirement of Section 78u-4(a)(3)(B)(iii)(I).

Plaintiffs move to be appointed as a group of lead plaintiffs. (<u>See</u> Motion at 1; "Pl. Mem.," Dkt No. 56 at 1.) Considering that the PSLRA permits a "person or group of persons" to be appointed lead plaintiff without defining what a "group" can or should be, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the prevailing view in this District is that unrelated investors may join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class. <u>See, e.g.</u>, <u>Varghese v. China Shenghuo Pharm. Holdings, Inc.</u> 589 F. Supp. 2d 388, 392

(S.D.N.Y. 2008); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

The overarching concern is whether the proposed group has proffered an evidentiary showing that its unrelated members will be able to function cohesively and to effectively manage the litigation apart from their lawyers. Factors that courts have considered when evaluating this concern include evidence of: (1) the existence of a pre-litigation relationship among group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. See Varghese, 589 F. Supp. 2d at 392; see also Freudenberg v. E*Trade Fin. Corp., Nos. 07 Civ. 8538 et al., 2008 WL 2876363, at *4 (S.D.N.Y. July 16, 2008); Reimer v. Ambac Fin. Grp., Inc., Nos. 08 Civ. 411 et al., 2008 WL 2073932, at *3 (S.D.N.Y. May 9, 2008). In short, the proposed plaintiffs have the burden of showing that aggregation is appropriate, "evinc[ing] an ability (and a desire) to work collectively to manage the litigation." Reimer, 2008 WL 2073931, at *3; see International Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc., 15 Civ. 3599, 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015).

Courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation. See, e.g., Jakobsen v. Aphria, Inc., 18 Civ. 11376, 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (rejecting application from group where "members barely allege any involvement in the litigation" and include vague and conclusory "plans for cooperation"); Micholle v. Ophthotech Corp., 17 Civ. 210, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) ("conclusory assurances" found insufficient to establish effective management of the litigation); In re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (rejecting applications with no evidentiary basis for aggregation other than that group was represented by set of lawyers, and "no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future"); Goldberger v. PXRE Grp., Ltd., Nos. 06 Civ. 3410 et al., 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (rejecting proposed group that "shares only this lawsuit in common"). This approach is informed by Congress' intent that plaintiffs, not their lawyers, should drive securities class actions under the PSLRA. See Jakobsen, 2019 WL 1522598, at *4.

Here, Plaintiffs fail to provide the Court with any
evidence that its members have prior pertinent relationships,
demonstrated cooperative efforts, or that they will act
collectively and separately from their lawyers in the future.
The Plaintiffs are three individuals who allegedly purchased
BPDNs from Yieldstreet. Plaintiffs do not describe how the
group was formed, how they will work together to manage the
litigation, whether a pre-litigation relationship existed
among its members, whether they have participated in the
litigation other than reviewing the CAC, or any other
information about how such aggregation would benefit the
class. See id., 2019 WL 1522598, at *3 (finding that where
group members do not have pre-litigation relationship,
"courts have typically required that plaintiffs . . . present
a more compelling showing as to their fitness for the
position."). Neither do Plaintiffs inform the Court whether
its members have ever communicated with each other or plan to
do so in the future, or if they are even aware of each other's
existence. Also missing is an explanation of Plaintiffs'
"business expertise, educational background, or management
experience," Nakamura v. BRF S.A., No. 18 Civ. 2213, 2018 WL
3217412, at *3 (S.D.N.Y. July 2, 2018), leaving the Court to
question whether the three individual plaintiffs here have
the requisite sophistication to effectively prosecute this

action. Cf. Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 119-20 (S.D.N.Y. 2010) (approving group where individuals submitted evidence of sophistication, intent to participate, decision-making structure, and established methods of communication amongst themselves and counsel). Indeed, the only submissions provided to the Court about Plaintiffs' interests and involvement in the litigation thus far are boilerplate certifications signed and dated by each group member. (See "Certifications," Dkt. No. 55-2.)

Accordingly, the Court is not persuaded that Plaintiffs have adequately demonstrated that they are able to and will act collectively and separately from their lawyers to effectively manage this litigation. The Court concludes that Plaintiffs have failed to meet their burden as a group, and therefore their motion for appointment as joint lead plaintiff is DENIED.

B. INDIVIDUAL LEAD PLAINTIFF

In denying Plaintiffs' Motion for appointment as joint lead plaintiff, the Court may consider each investor individually, as if such plaintiff had moved to be appointed as lead plaintiff alone. See, e.g., Varghese, 589 F. Supp. 2d at 394 (collecting cases). To do so, the Court must first determine which individual has the "largest financial

interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

To determine which movant has the largest financial interest, courts in this District overwhelmingly rely on four factors derived from Lax v. First Merch. Acceptance Corp., Nos. 97 Civ. 2715 et al., 1997 Wl 461036, at *5 (N.D. Ill. Aug. 11, 1997), and In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y.) (the "Lax/Olsten" factors). Courts place the most emphasis on the last Lax/Olsten factor, "financial loss." See In re KIT Dig., Inc. Sec. Litig., 293 F.R.D. 441, 445 (S.D.N.Y. 2013).

There is no dispute here about the individual Plaintiffs' financial interests. Each of Plaintiffs' Certifications attests to the number of notes such plaintiff purchased and the price of those notes. Tecku attests to losses of $100,000, Finkelstein attests to losses of $150,000, and Tjok attests to losses of $125,000. Based upon financial interests alone, Finkelstein is the presumptive lead plaintiff pursuant to 15 U.S.C. Section 78u-4(a)(3)(B)(iii)(I).

Finkelstein must additionally satisfy the criteria of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). If Finkelstein does not satisfy Rule 23, the Court must repeat the Rule 23 inquiry with the plaintiff with the next-largest

financial stake until the Court finds a plaintiff who is willing to serve and is able to satisfy the requirements of Rule 23. See Varghese, 589 F. Supp. 2d at 397 n.7 (citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)).

Rule 23 states that a party may serve as class representative only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

At this stage in the litigation, movants need only make a prima facie showing that the requirements of Rule 23 are satisfied. See KIT, 293 F.R.D. at 445; In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Further, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA," Fuwei Films, 247 F.R.D. at 445, and a "wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (modification in original) (quotations omitted).

11

Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Topping v. Deloitte Touche Tohmatsu CPA</u>, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) (quotation omitted). The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." <u>Id.</u>

Despite having the largest financial interest, Finkelstein's claims are not typical of the class because, unlike the other purported class members, he did not invest in Yieldstreet's Louisiana Oil & Gas Fund. Finkelstein attests that he purchased one BPDN in the offering known as Yieldstreet's Vessel Deconstruction Fund IV. (<u>See</u> "Finkelstein Certification," Dkt. No. 55-1 at 2.) Plaintiffs' claims involve misrepresentations affecting investors in both Yieldstreet's Louisiana Oil & Gas Fund and its Vessel Deconstruction Funds. (<u>See generally</u> CAC); <u>Tecku v. Yieldstreet, Inc</u>, 20 Civ. 7327, 2022 WL 1322231 (S.D.N.Y. May 3, 2022). As such, Finkelstein's claims are not typical of the class.

The investor with the next largest financial loss of $125,000, Tjok, invested in both the Vessel Deconstruction Funds and the Louisiana Oil & Gas Fund. (See "Tjok Certification," Dkt. No. 55-1 at 3.) Tjok's claims are typical of the purported class. Like other class members, he alleges that: (1) he purchased BPDNs in Yieldstreet's Vessel Deconstruction Funds and Louisiana Oil & Gas Fund during the class period; (2) he purchased shares in reliance on Yieldstreet's misrepresentations in the offering documents for these Funds; and (3) he suffered damages as a result. (See Tjok Certification; CAC ¶¶ 118, 184, 199); Reimer, 2008 WL 2073931, at *4 ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992))).

Further, based on the memoranda and declarations submitted by Tjok's counsel, the Court is persuaded that Tjok has made a preliminary showing that he will adequately protect the interests of the purported class. (See generally Pl. Mem.; "Centner Decl.," Dkt. No. 57; "Sonn Decl.," Dkt. No. 58.) Tjok is represented by experienced and qualified attorneys; the Court is not aware of any interests that Tjok may have that are antagonistic to those of other purported class

members; and he has a significant interest in the outcome of
this action. See Kuriakose v. Fed. Home Loan Mortgage Co.,
No. 08 Civ. 7281, 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24,
2008). Tjok therefore satisfies all three requirements of 15
U.S.C. Section 78u-4(a)(B)(iii)(I). Accordingly, Tjok is
entitled to a rebuttable presumption that he should be
appointed lead plaintiff.

Section 78u-4(a)(3)(B)(iii)(II) provides that Tjok's
status as the presumptively most adequate plaintiff:

> may be rebutted only upon proof by a member of the
> purported class that the presumptively most adequate
> plaintiff –
>
> (aa) will not fairly and adequately protect the
> interests of the class; or
>
> (bb) is subject to unique defenses that render such
> plaintiff incapable of adequately representing the
> class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

No such proof has been proffered here, and the Court is
not aware of any unique or potentially prevailing defenses
that may be asserted against Tjok, nor any other reason that
would make Tjok unable to fairly and adequately protect the
class. See Fuwei Films, 247 F.R.D. at 436. Tjok has made the
preliminary showing of adequacy and typicality, and it would
be inappropriate for the Court to conduct a full Rule 23
inquiry at this stage. See Weinberg, 216 F.R.D. at 252.

14

Accordingly, the Court finds that at this stage of the litigation Tjok adequately satisfies the requirements of Rule 23, and therefore the Court appoints Tjok as lead plaintiff in this action.

C. <u>LEAD COUNSEL</u>

The PSLRA instructs that upon appointing a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." <u>In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quotations omitted).

Tjok has selected Peiffer Wolf Carr Kane Conway & Wise, LLP ("Peiffer Wolf") and Sonn Law Group PA ("Sonn Law") as co-lead counsel. Representatives from each firm have submitted a declaration setting forth the firms' extensive experience in prosecuting securities fraud actions, as well as the qualifications of the individual partners. (<u>See</u> Centner Decl. Ex. 1; Sonn Decl. Ex. 1.) The Court is persuaded that Peiffer Wolf and Sonn Law can adequately represent the class here, <u>see</u>, <u>e.g.</u>, <u>In re Tarragon Corp. Sec. Litig.</u>, No. 07 Civ. 7972, 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007)

(approving counsel based on "affidavit setting forth [the] law firm's experiences as class counsel"), provided that there is no duplication of attorneys' services, and the use of co-counsel does not in any way increase attorneys' fees or expenses.

### IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Dkt. No. 55) of plaintiffs Michael Tecku, David Finkelstein, and Lawrence Tjok ("Tjok") is DENIED as to the group's appointment as lead plaintiff and GRANTED as to Tjok's appointment as lead plaintiff and appointment of Tjok's choice of counsel as lead co-counsel.

**SO ORDERED.**

Dated:     August 22, 2022
           New York, New York

_____
Victor Marrero
U.S.D.J.

16