USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __12/20/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL TECKU; DAVID FINKELSTEIN; AND LAWRENCE TJOK, *individually and on behalf of all others similarly situated*,
　　　　　Plaintiffs,
　　v.
YIELDSTREET INC.; YIELDSTREET MANAGEMENT, LLC; YS ALTNOTES I, LLC; YS ALTNOTES II, LLC; AND MICHAEL WEISZ,
　　　　　Defendants.

No.: 1:20-cv-07327 (VM) (SDA)

**ESI Plan and Order**

　　Plaintiffs Michael Tecku, David Finkelstein, and Lawrence Tjok (together, "Plaintiffs") and Defendants Yieldstreet Inc.; Yieldstreet Management, LLC; YS Altnotes I, LLC; YS Altnotes II, LLC; and Michael Weisz (collectively, "Defendants") (each of Plaintiffs and Defendants a "Party" and collectively, the "Parties"), through their respective counsel, hereby agree as follows:

　　1.　　Scope of This ESI Protocol. This Stipulation Regarding the Production and Discovery of Electronically Stored Information (the "ESI Protocol") shall govern the production and discovery of ESI (as defined in paragraph 2(c), infra) by the Parties in the above-captioned matter.

　　2.　　Definitions. The following capitalized terms used in this ESI Protocol shall have the meanings assigned to them below.

　　　　a.　　"Database" means a collection of related ESI organized, often in rows, columns and tables, in an electronic environment for a particular purpose.

　　　　b.　　"Document" means any document as that term is defined in Local Civil Rule 26.3(c)(2), including, without limitation, all ESI.

　　　　c.　　"Electronic Documents or Data" means documents or data existing in

electronic form at the time of collection, including but not limited to: e-mail, "text" messages, including both short messaging service (SMS) and multimedia messaging service (MMS) based communications, instant messaging ("IM"), including Skype, Teams, Slack, or other similar services, or any other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

    d.  "ESI" means electronically stored information, as that term is used in Fed. R. Civ. P. 34(a)(1)(A) and includes, but is not limited to, Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, cloud drives, or other real or virtualized devices or media.

    e.  "Native Format" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified.

    f.  "Party" and "Parties" have the meanings assigned to them in the preamble of this ESI Protocol, supra.

    g.  "Non-party" means any entity not included in the caption to this matter.

    h.  "Producing Party" means the Party or Non-Party producing ESI in response to a discovery request propounded by another Party.

    i.  "Protected Information" means information protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privileges, doctrines, or protections.

    j.  "Receiving Party" means the Party requesting and/or receiving ESI in response to a discovery request propounded by that Party or another Party.

3. <u>General Provisions</u>. The following principles shall govern the construction and interpretation of this ESI Protocol:

a. <u>Cost-Efficiency</u>. The terms of this ESI Protocol shall be construed to ensure the cost-efficient and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders by this Court.

b. <u>Discoverability</u>. Nothing in this ESI Protocol shall be interpreted to require the disclosure of any Document that a Party contends is not discoverable or is protected from disclosure by the attorney-client privilege; the attorney work product doctrine; any other applicable privileges, doctrines, or protections; or any other objection set forth in the Party's responses to discovery requests. Additionally, consistent with paragraph 3(c), <u>infra</u>, nothing in this ESI Protocol shall be deemed to waive or limit a Party's right to object to the production of ESI, pursuant to Fed. R. Civ. P. 26(b)(2)(B), on the ground that the source(s) are not reasonably accessible because of undue burden or cost.

c. <u>No Waiver of Objections</u>. Nothing in this ESI Protocol shall be construed to imply that a Party concedes that ESI produced pursuant to this ESI Protocol is relevant to, or admissible in, this litigation or in any other litigation. Additionally, nothing in this ESI Protocol shall be deemed to waive any written objections of the Parties set forth in the Parties' respective responses to discovery requests, or otherwise commit the Parties to produce information that the Parties have not agreed to produce or have objected to disclosing or that is otherwise the subject of a discovery dispute and/or motion to compel.

4. <u>Form and Manner of Production</u>. The following provisions shall govern the form and manner in which ESI shall be produced in this litigation:

a. <u>Documents to Be Produced as TIFF Images</u>. Except as otherwise provided

in this ESI Protocol, the Producing Party shall produce Documents as black and white, single-page Group IV standard TIFF images (if possible, not less than 300 dpi resolution). The images shall be endorsed with sequential Bates numbers and the appropriate confidentiality designation, if any, required by any applicable protective order to be agreed upon and entered in this litigation, and accompanied by a load file consistent with paragraph 4(d), infra. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of email messages should include the BCC line. PowerPoint or other presentation slide documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPEG if imaged. All other documents or data must be processed to show readily available hidden content, tracked changes or edits, comments, notes, and other similar information viewable in the native file or TIFF/JPEG images.

        b.      Spreadsheets. The Producing Party shall produce spreadsheets in Native Format. In lieu of Bates-stamping spreadsheets produced in Native Format, the Producing Party shall title each file using a unique Bates number. In lieu of endorsing spreadsheets produced in Native Format with any appropriate confidentiality designation required by any applicable protective order entered in this litigation, the Producing Party shall, at its option, (i) include in the title of each file, as appropriate, a shorthand version of the appropriate confidentiality designation, and/or (ii) include the appropriate confidentiality designation in a metadata field. As to option (i), for example, a file produced in Native Format that a Producing Party desires to designate as "Confidential" would be titled "Def_00123_Confidential." Notwithstanding the shorthand confidentiality designations assigned to spreadsheets produced in Native Format, either via option (i) or option (ii), each such file shall be afforded the full protections of any applicable protective

order entered in this litigation. If the Producing Party redacts any information from a spreadsheet, such redacted spreadsheets shall be produced in redacted Native Format. The Producing Party may modify that spreadsheet solely and only insofar as necessary to effect necessary redactions. In the event it is not possible to redact a spreadsheet in Native Format, the Producing Party may produce the redacted spreadsheet as TIFF images consistent with paragraph 4(a), supra; and shall ensure that column and row headings, as well as gridlines, are visible on each page. Notwithstanding the preceding, insofar as printouts or images of all or part of a spreadsheet were also maintained in static form, those spreadsheets may be produced as TIFF images, consistent with paragraph 4(a), supra.

      c.      Additional Documents to be Produced in Native Format. The Receiving Party may request that the Producing Party produce additional ESI in Native Format where the converted TIFF image distorts the Document or otherwise renders it unusable. The Receiving Party shall specifically list any such Documents by Bates number, and the Parties shall meet and confer concerning the production of those Documents in Native Format. Any Word document containing tracked changes or comment bubbles shall be produced in Native format.

      d.      Load Files. The Producing Party shall provide (i) a delimited database load file (".DAT") that contains the metadata required by paragraph 4(f), infra; (ii) an image cross-reference load file (".OPT") providing the beginning and ending endorsed Bates number of each Document, a link to the relative file path of the Document's image(s), and the number of pages it comprises; and (iii) searchable text or OCR files, consistent with paragraph 4(e), infra.

      e.      Searchable Text/OCR Files. The following provisions shall govern the production of searchable text and/or OCR files:

            i.      Documents That Are Not Redacted. To the extent possible, the

Producing Party shall produce Document-level extracted text or Document-level OCR text. The Producing Party shall provide extracted text for spreadsheets provided in Native Format and Documents for which extracted text is available. The Producing Party shall provide OCR text for Documents for which extracted text is not available.

ii. <u>Redacted Documents</u>. If a Document is redacted, the Producing Party shall produce Document-level OCR text only for those portions of the Document that are not redacted, and the Producing Party may withhold any metadata associated with the redaction. Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions, as well as the metadata required under this Protocol. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Producing Party's failure to withhold OCR text or metadata for a redacted Document shall not be deemed a waiver of the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privileges, doctrines, or protections associated with that Document, and the text of redacted portions of a redacted Document or other Protected Information contained in any metadata or text file shall be treated as Protected Information.

f. <u>Metadata</u>. Absent a showing of good cause, no Party is required to produce metadata, except for the following fields and in any event only insofar as such metadata is readily available, responsive, and not subject to the attorney-client privilege, attorney work product doctrine, and/or any other applicable privileges, doctrines, or protections:

| METADATA FIELD | DESCRIPTION |
|---|---|
| BEGDOC | beginning Bates number assigned to each document; |
| ENDDOC | ending Bates number assigned to each document; |
| BEGATTACH | beginning Bates number assigned to the group of documents with which the parent document and any attachment documents are associated; |
| ENDATTACH | ending Bates number assigned to the group of documents with which the parent document and any attachment documents are associated; |
| CUSTODIAN(S) | source custodian or name of non-custodial source; |
| FILENAME | the filename of a produced document; |
| DOCEXT | the file extension (e.g., .xls, .ppt) of a produced document; |
| DOCDATE | date last modified; |
| DOCAUTHOR | the author of a document; |
| TO | the "To" line of a produced email; |
| CC | the "Cc" line of a produced email; |
| BCC | the "Bcc" line of a produced email; |
| FROM | the "From" line of a produced email; |
| EMAILSUBJECT | the subject line of a produced email; |
| DATESENT | the date a produced email was sent; |
| TIMESENT | the time a produced email was sent; |
| DATERCVD | the date a produced email was received; |
| TIMERCVD | the time a produced email was received; |
| THREADID | the email thread identification; |
| INTMESSAGEID | the globally unique identifier for a message which typically includes message ID and a domain name; |
| INTREPLYID | the internet message ID of the email replied to; |
| CONFIDENTIALITY | the confidentiality designation of a document; |
| REDACTED | indicates if a document has been redacted; |
| NATIVEFILE | the location of the produced native version of a document; |
| TEXTFILE | the location of the extracted text/OCR text for a produced document; and |
| HASHVALUE | the hash value of the file. |

g.  Color. The Receiving Party may request that the Producing Party produce documents in color where necessary to interpret the Document (e.g., if the coloring of any Document communicates any substantive information, or if black and white photocopying or conversion to TIFF format of any Document (e.g., a chart or graph) makes any substantive information contained in the Document unintelligible). The Receiving Party shall specifically list

7

any such Documents by Bates number, and the Parties shall meet and confer concerning the production of those Documents in color.

   h. <u>Databases</u>. To the extent discovery requires the production of ESI contained in a Database, the Parties shall meet and confer to determine the most effective format of production. The Producing Party shall not be obligated to produce the entire Database containing non-responsive ESI in which the relevant, responsive ESI resides, the underlying Database application/software, or the Database engine, so long as the data derived from the Database is reasonably usable.

   i. <u>Miscellaneous Electronic Files</u>. Certain types of ESI (<u>e.g.</u>, audio or sound files) may not be amenable to conversion into anything meaningful or reviewable in TIFF format. ESI of this nature shall be produced in Native Format with an associated placeholder TIFF image.

   j. <u>Production Media</u>. The Producing Party shall produce ESI in accordance with this ESI Protocol on readily accessible, computer or electronic media, including without limitation, CD ROM, DVD, external hard drive (with standard PC compatible interface), or such other media as the Parties may agree upon.  The Producing Party shall affix a unique identifying label to each piece of production media, which shall identify (i) the date of the production, (ii) the Bates number range(s) of the Documents on the production media (except that when such information cannot practicably be included on the production media, it may be provided in an accompanying letter), and (iii) the confidentiality designation, if any, required by any applicable protective order to be agreed upon and entered in this litigation.  Alternatively, the Producing Party may produce ESI in accordance with this ESI Protocol by uploading the production to an FTP site and providing the Receiving Party with instructions for downloading the production. In such cases, the Producing Party shall include in the transmitting correspondence the information

required by subdivisions (i) through (iii) of this paragraph.

    k. <u>Hard-Copy Documents</u>. Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and produced following the same protocols set forth above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized. Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields. The Parties will make their best efforts to unitize the documents correctly. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable. Pages with Post-it notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-it. Original document orientation (i.e., portrait v. landscape) should be maintained. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "SOURCE," "CONFIDENTIAL," "REDACTION," and "COMPANY" fields, as well as "BEGATTACH" and

"ENDATTACH" fields where applicable.

     5.    <u>Documents Excluded from Discovery</u>. The Parties agree that the following types of Documents are not required to be produced in this litigation:

     a.    <u>Embedded Objects</u>. Certain types of ESI that are attached to emails usually contain information that is not material to an action including, for example, an email sender's "vcard" as well as an image file depicting an email sender's company logo. Accordingly, no Party is required to produce files with a .vcf extension or any files that are less than 1,000 bytes in size with the following file extensions: .jpeg; .gif; .png; .jpg; and .bmp.

     b.    <u>Deleted Files, Ephemeral Data</u>. Absent a specific showing of need, the following categories of ESI are not discoverable in this case: "deleted," "slack," "fragmented," or "unallocated" data on hard drives; random access memory (RAM) or other ephemeral data; and on-line access data such as temporary internet files, history, cache, cookies, etc. If a Party demonstrates a specific need for information encompassed by this section and to the extent such information exists, the Parties shall meet and confer on whether such data should be produced or preserved on a forward-looking basis and/or whether cost-shifting is appropriate. However, prior to a showing of a specific need and an agreement among the Parties on the need or Court order accepting the need, there shall be no obligation to preserve such information.

     c.    <u>Duplicates</u>. A Producing Party having identical copies of a Document need only produce a single copy of that Document. A Producing Party may de-duplicate its Document population across the entirety of the information collected. The Parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified from the Document or associated metadata. A Producing Party that de-duplicates Documents shall either provide to the

Requesting Party a log of all such de-duplication so that the Requesting Party can identify all custodial departmental files that contained a Document or provide, as metadata, the custodians who had copies of a Document that was de-duplicated.

      d.      Email threading. Each Party may utilize email threading but is not required to. Only the final-in-time email need be produced, provided that all content in previous emails, including attachments, is contained within the final message such that no unique content is removed as a result of the threading process.

      e.      Parent-Child Relationship. The Parties acknowledge and agree that parent-child relationships within a document family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive, non-privileged electronic documents attached to an email or embedded within other electronic documents and hard-copy documents attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

      f.      Productions From Other Proceedings. Notwithstanding any competing provisions in this Stipulation, to the extent documents produced by Defendants in other proceedings are responsive to document requests issued by Plaintiffs, Defendants shall produce such documents to Plaintiffs in the same format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files. However, Defendants

need not produce the same document multiple times, e.g., once in response to a request for documents produced in other proceedings or to other entities and once more "directly" in response to a document request from Plaintiffs.

      g.    <u>Password Protection</u>. In the event any Document or ESI (or portion thereof) produced is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the document or ESI.

      h.    <u>ESI that is not Reasonably Accessible</u>. Consistent with Fed. R. Civ. P. 26(b)(2)(B), absent a specific showing of need, the Parties shall not be required to preserve, search for, or produce Documents that are not reasonably accessible without undue burden or cost, including back-up tapes, disaster recovery systems, offline archives, deleted or residual data, and data sources that are not used for normal business operations and/or require unreasonable expense or burden to preserve, search, and/or produce. If a Party demonstrates a specific need for information encompassed by this section and to the extent such information exists, the Parties shall meet and confer on whether such data should be produced or preserved on a forward-looking basis and/or whether cost-shifting is appropriate. However, prior to a showing of a specific need and an agreement among the Parties on the need or Court order accepting the need, there shall be no obligation to preserve such information.

      i.    <u>DeNISTing</u>. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from Document review and production) need not be processed, reviewed, or produced.

      6.    <u>Technology Assisted Review ("TAR")</u>. The Parties agree that a Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own ESI. If a Producing Party elects to use TAR to cull documents from the set of

documents identified by search terms or other methods ("Review Set"), the Producing Party shall disclose the TAR software that will be used, as well as whether a TAR 1.0 or TAR 2.0 (CAL) workflow will be implemented. If the Producing Party determines that further review of documents in the TAR population is disproportionate, the Producing Party will disclose the validation processes used to support ceasing review. The parties agree to meet and confer in good faith following receipt of any disclosures subject to this paragraph to discuss and resolve perceived issues with the TAR workflow or validation process. If a Producing Party uses TAR to cull documents, the Producing Party remains obligated to maintain any culled documents in the Review Set in such a manner to allow prompt further review and production if compelled by the Court to do so.

      7.      <u>Data Security</u>. The Parties agree that documents received in discovery will be kept and maintained in a secure location.  Pursuant to this provision, the Receiving Party agrees to provide reasonable information related to (1) any document review platforms and/or vendors that the Receiving Party anticipates using to store and/or review documents, and (2) any file sharing platforms that the Receiving Party anticipates using to move documents upon request.  The Parties agree that documents received from a Producing Party will be maintained, accessed, and shared in a way that assures the security, privacy, and confidentiality of the documents.  *See generally* Protective Order (ECF 68), ¶¶ 17, 18.

      8.      <u>Non-Party Subpoena</u>. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and state that the Parties to the Action have requested that the third party produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a third-party subpoena to all other Parties. Nothing in this ESI Protocol is intended or may be interpreted to

narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

9. <u>Inability to Comply with this ESI Protocol</u>. The Parties agree that unforeseen issues can arise in connection with the production of ESI. While the Parties shall use their best efforts to comply with the terms of this ESI Protocol, the Parties recognize that strict compliance may not be possible or cost-efficient in all cases, resulting in an inability to comply, either literally or not without the imposition of an undue burden. The Parties agree to alert each other (i) concerning any technical problems preventing compliance with this ESI Protocol, and/or (ii) to the extent compliance with this ESI Protocol imposes an undue burden on a Party. If a Party is unable to comply with this ESI Protocol under either scenario (i) or (ii), the Parties shall promptly meet and confer in an effort to resolve the issue. If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party insisting on strict compliance with this ESI Protocol may seek relief from the Court no later than fifteen (15) business days after being alerted of the inability to comply. Absent a timely application to the Court pursuant to the immediately preceding provision, the Party insisting on strict compliance with this ESI Protocol cannot insist on strict compliance with respect to the subject discovery dispute and must accept a reasonable substitute for strict compliance.

Dated: December 19, 2022                                                                  Respectfully submitted,

| By:  */s/ Daniel B. Centner* <br> Daniel B. Centner, Esq. <br> **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP** <br> Joseph Peiffer (admitted PHV) <br> Daniel Centner <br> 1519 Robert C. Blakes Sr. Drive <br> New Orleans, LA 70130 <br> Telephone: (504) 523-2434 <br> Facsimile: (504) 608-1465 <br> jpeiffer@peifferwolf.com | By: */s/ Robert M. Tiefenbrun* <br> **GOODWIN PROCTER LLP** <br> Robert Tiefenbrun <br> 601 S. Figueroa Street, Suite 4100 <br> Los Angeles, CA 90017 <br> 213-426-2500 <br> RTiefenbrun@goodwinlaw.com <br><br> Jonathan A. Shapiro (*pro hac vice*) <br> Three Embarcadero Center, Suite 2800 <br> San Francisco, CA 94111 |

| | |
|---|---|
| dcentner@peifferwolf.com | 415-733-6202<br>JShapiro@goodwinlaw.com |
| **SONN LAW GROUP, P.A.**<br>Jeffrey R. Sonn, Esq. (admitted PHV)<br>Brian B. Pastor, Esq. (admitted PHV)<br>One Turnberry Place<br>19495 Biscayne Blvd., Suite 607<br>Aventura, FL 33180<br>Telephone: (305) 912-3000<br>Facsimile: (786) 485-1501<br>jsonn@sonnlaw.com<br>aanzola@sonnlaw.com<br>bpastor@sonnlaw.com<br>service@sonnlaw.com<br><br>*Attorneys for Plaintiffs Michael Tecku, David Finkelstein, Lawrence Tjok, and the Proposed Class* | **BAKER BOTTS LLP**<br>Brendan F. Quigley<br>30 Rockefeller Plaza<br>New York, New York 10112<br>212-408-2551<br>brendan.quigley@bakerbotts.com<br><br>*Counsel for Defendants Yieldstreet Inc.; Yieldstreet Management, LLC; YS Altnotes I, LLC; YS Altnotes II, LLC; and Michael Weisz* |

Dated: December 20, 2022

**SO ORDERED:**

_____

Stewart D. Aaron
U.S. Magistrate Judge

15