

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

Michael Tecku et al.,

                                        Plaintiffs,

            -against-

YieldStreet Inc. et al.,

                                        Defendants.

**1:20-cv-07327 (VM) (SDA)**

<u>REPORT AND RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VICTOR MARRERO, UNITED STATES DISTRICT JUDGE:**

Pending before the Court are Plaintiffs' motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure (Pls.' 2/17/23 Not. of Mot., ECF No. 87), and Defendants' motion to strike certain documents filed by Plaintiffs in support of their motion. (Defs.' Mot. to Strike, ECF No. 102.) For the reasons set forth below, I respectfully recommend that Plaintiffs' motion be GRANTED IN PART and DENIED IN PART and that Defendants' motion to strike be DENIED.

<u>BACKGROUND[1]</u>

Plaintiffs Michael Tecku ("Tecku"), David Finkelstein ("Finkelstein") and Lawrence Tjok ("Tjok"), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), bring this action against Yieldstreet Inc., Yieldstreet Management LLC ("Yieldstreet Management"), YS ALTNOTES I LLC ("ALTNOTES I"), YS ALTNOTES II LLC ("ALTNOTES II") (collectively, "Yieldstreet") and Michael Weisz ("Weisz," and together with Yieldstreet, the "Defendants"), asserting claims

---

[1] This Background section is drawn from Plaintiff's Corrected Amended Complaint ("CAC"), filed at ECF No. 51, and the Court's Decision and Order denying Defendants' motion to dismiss the CAC. *See Tecku v. Yieldstreet, Inc.*, No. 20-CV-07327 (VM), 2022 WL 1322231, at *1 (S.D.N.Y. May 3, 2022) ("*Tecku II*").

stemming from alleged monetary loss after Plaintiffs invested in Defendants' security offerings. (*See generally* CAC.)

I.   **Parties**

Defendant Yieldstreet Inc. is an investment company that offers innovative investment products to accredited investors. (CAC ¶¶ 30, 35-37.) Yieldstreet Inc. offers investors access to their investment products, mainly debt instruments called "borrower payment dependent notes" ("BPDNs"), through an online investment portal which displays products that Yieldstreet Inc. has prescreened and selected for sale on its platform. (*Id*. ¶¶ 3, 37-38, 42.) Yieldstreet Inc. markets itself as an "investor-first" company which acts as the investor's "partner." (*Id*. ¶¶ 39-40.) Yieldstreet Inc. has affiliates that include Yieldstreet Management, an investment advisor registered with the Securities Exchange Commission ("SEC"), and ALTNOTES I and ALTNOTES II. (*Id*. ¶¶ 31-33.) Weisz is the president and co-founder of Yieldstreet Inc. and its subsidiaries. In this capacity, Weisz exercises complete control over Yieldstreet's investment decisions. (*Id*. ¶¶ 13, 34.)

Plaintiffs are individual investors in Yieldstreet's investment products. On or about December 21, 2018, Plaintiff Tjok purchased a BPDN from ALTNOTES I for the price of $25,000. (CAC ¶ 142.) Tjok also purchased $25,000 in the same offering on June 12, 2018. (*Id*.) The notes were issued under Special Purpose Vehicle ("SPV") YS GM Marfin II LLC in the offering known as Yieldstreet's Vessel Deconstruction Fund I ("Decon Fund I"). (*Id*.) On or about April 11, 2019, Tjok purchased a BPDN from ALTNOTES II for the price of $25,000. (*Id*. ¶ 143.) The note was issued under SPV YS GM MF VIII LLC in the offering known as Yieldstreet's Short Term Vessel Refinancing Fund. (*Id*.) On or about April 22, 2019, Tjok purchased a BPDN from ALTNOTES II for the price of

$25,000. (*Id*. ¶ 144.) The note was issued under SPV YS GM MF VII LLC in the offering known as

Yieldstreet's Vessel Deconstruction Fund III ("Decon Fund III"). (*Id*.) On October 9, 2018, Tjok

purchased a BPDN from ALTNOTES I for the price of $25,000. (*Id*. ¶ 145.) The note was issued

under SPV ARNA OGFin I LLC in the offering known as Yieldstreet's Louisiana Oil & Gas Fund ("Oil

& Gas Fund"). (*Id*.)

On or about June 19, 2019, Plaintiff Tecku purchased a BDPN from ALTNOTES II for the

price of $100,000. (CAC ¶ 146.) The note was issued under SPV YS GM MF IX LLC in the offering

known as Yieldstreet's Vessel Deconstruction Fund IV ("Decon Fund IV"). (*Id*.)

On or about September 29, 2019, Plaintiff Finkelstein purchased a BDPN from ALNOTES I

for the price of $150,000. (CAC ¶ 147.) The note was issued under SPV YS GM MF X, LLC in the

offering known as Yieldstreet's Vessel Deconstruction Fund VI. (*Id*.)

## II.    <u>Alleged Misrepresentations And Omissions</u>

Plaintiffs contend that Yieldstreet had not been transparent in its communications to

potential investors. Plaintiffs allege that Yieldstreet misrepresented material facts about the

stability and attractiveness of their investment products in the April 5, 2018 and January 16, 2019

private placement memoranda for ALTNOTES I and ALTNOTES II ("ALTNOTES I PPM" and

"ALTNOTES II PPM," respectively, and collectively, the "PPMs").[2] (CAC ¶¶ 61-62.) For example,

Plaintiffs allege that Yieldstreet falsely told its investors via the PPMs that "none of the

investments offered on Yieldstreet's online platform had ever lost any principal." (*Id*. ¶ 62.) In

---

[2] In addition to transmitting information to potential investors through the PPMs, Yieldstreet made available a Series Note Supplement ("SNS") for each of the offerings. (CAC ¶ 51.) Yieldstreet's PPMs defined the SNS as "the authoritative description of any series of Notes offered by the Company." (*Id*. ¶ 52.) SNSs were available to Yieldstreet's investors through its private online portal. (*Id*. ¶ 57.)

addition, Plaintiffs contend that Yieldstreet offered certain classes of investments subject to numerous false or misleading statements or omissions, including undisclosed inadequacies in its deal screening process (CAC ¶ 67), discussed below.

A.     **Vessel Deconstruction Funds**

Soon after the ALTNOTES I PPM was distributed, Yieldstreet launched its "Marine Finance" line as a new asset class under the BPDN framework. (CAC ¶ 68.) Yieldstreet's offering materials lauded its marine finance loans as a "first-of-a-kind investment product" that would combine "sophisticated structuring" and Yieldstreet's "40 years of Marine industry experience" to offer "flexible capital to originators in the Marine industry." (*Id*.) Yieldstreet's Marine Finance line eventually grew to represent a substantial portion of Yieldstreet's overall portfolio. (*Id*. ¶ 69.) The majority of these deals were vessel deconstruction transactions whereby investor funds were raised through a BPDN offering and then loaned (through a dedicated SPV) to an undisclosed borrower for the purpose of acquiring, transporting and deconstructing a particular vessel for demolition, with the goal of selling the scrap for a profit over the transaction price. (*Id*.)

Plaintiffs allege that the vessel deconstruction industry was a particularly volatile one requiring a high degree of industry knowledge to successfully navigate. (CAC ¶ 70.) For example, Plaintiffs allege that the deconstruction process can proceed across multiple continents, sometimes in developing nations that lack stable infrastructures. (*Id*. ¶ 72.) As a result, according to Plaintiffs, the process often was complicated, and slowed, by external factors ranging from catastrophic weather conditions to civil turmoil. (*Id*.)

Plaintiffs allege Yieldstreet induced investors to invest in this volatile industry through false or misleading statements regarding their three-step diligence process laid out for investors

in the SNS for each BPDN offering. (CAC ¶ 76.) In the first step, Yieldstreet represented that they relied on Global Marine Transport Capital ("Global Marine") to identify potential vessel-deconstruction opportunities and vet transactions that do not fit its lending methodology. (*Id*. ¶¶ 76-79.) Global Marine purportedly had expertise in the industry, lending experience and the contacts necessary to identify attractive investments. (*Id*. ¶ 80.)

Deals that survived Global Marine's vetting went on to the second step, which included an independent analysis of the investment opportunity by Yieldstreet through its underwriting — a process in which a multi-party credit committee with veto powers reviewed the transaction. (CAC ¶¶ 81-83.) Yieldstreet's independent assessment included examining "the background and experience of the borrower; necessary collateralization of the loan to protect investors against default; and appropriate structuring for the borrower's particular industry." (*Id*. 84.) Plaintiffs contend that Yieldstreet performed neither the first nor second step as promised, and key facts developed through steps one and two of the vetting process then were omitted or misrepresented to potential investors. (*Id*. ¶ 86.)

Specifically, Plaintiffs allege that, after the high demand for Yieldstreet's first vessel-deconstruction offering, in October 2018 Yieldstreet abandoned the industry-standard model for loans in this space — revolving credit facilities with one-to-four-year lifespans — for much higher-risk short-term loans, a model conceptualized and championed by Weisz. (CAC ¶¶ 91-93.) Plaintiffs allege that Global Marine advised Weisz that this short-term lending model was a structural mismatch for vessel deconstruction and that the short timeframe to pay back these loans was impractical in such a volatile industry subject to unavoidable externalities and delays.

(*Id*. ¶ 96.) According to Plaintiffs, Yieldstreet moved away from the industry-standard model because it did not generate large management fees. (*Id*. ¶¶ 93-95.)

In October 2018, Weisz flew to Dubai for a closed-door meeting with the North Star Group ("North Star"), the borrowers on Yieldstreet's initial vessel-deconstruction offering, to discuss the short-term lending concept. (CAC ¶ 99.) Global Marine was not invited and did not attend. (*Id*. ¶ 100.) At this meeting, Weisz and North Star agreed to future investments, concentrated through North Star, using the short-term lending model. (*Id*. ¶¶ 101-03.)

In late 2018, Global Marine again warned Weisz of the risks associated with a short-term loan structure and further warned Weisz that such risk was magnified by funneling those products through a single borrower: North Star. (CAC ¶ 104.) Plaintiffs assert that Global Marine was familiar with North Star and, therefore, was well-positioned to opine on the risks of over-exposure, but that Weisz again ignored Global Marine's advice. (*Id*. ¶ 105.)

In a series of new vessel-deconstruction offerings from December 2018 through September 2019, Yieldstreet used the new, short-term lending model. Plaintiffs allege that the following information was either false, misleading or omitted from the offering documents for these offerings:

- Yieldstreet was using an unproven lending model;

- Global Marine explicitly had warned against using that model;

- Weisz would act as a one-man credit committee;

- Weisz lacked experience in Marine Vessel Deconstructing financing;

- All the investment products were being concentrated with the same borrower group; and

- Yieldstreet, while disclosing other instances of inexperience, did not disclose that its management team did not have the experience necessary to vet and structure a vessel-deconstruction loan — and in fact, had never been involved in any such loans before joining Yieldstreet.

(CAC ¶¶ 110-16, 178.)

Plaintiffs allege that in March 2020, the investments went into default as a result of Yieldstreet's overleveraged borrower being unable to repay the short-term loans. (CAC ¶ 120.) Plaintiffs further allege that, at the time the CAC was filed, $90 million in vessel-deconstruction loans were in default. (*Id*. ¶ 121.)

B.    **Other Yieldstreet Investments**

Plaintiffs allege that, as of March 2020, the Vessel Deconstruction Funds represented approximately one-half of Yieldstreet's portfolio, and other loans also were in default. (CAC ¶ 123.) For example, Plaintiffs allege that the Oil & Gas Fund lent money for the purchase of an oil and gas well. (*Id*. ¶¶ 124-25.) The SNS for this Fund stated that "[c]urrent production is approximately 13.5M cubic feet of gas equivalent per day (mmcf/day) or 2.2k barrels of oil equivalent (BOE) from 21 producing [oil and gas] wells." (*Id*. ¶ 126.) Plaintiffs allege this information was false, and Yieldstreet itself stated "in September 2018, production volume was nearly half [its projection]: 11.3 million cubic feet per day." (*Id*. ¶ 127.) Plaintiffs claim production volume projections are material information because production volume generates cash flow, which in turn supports repayment of the loan. (*Id*.)

**PROCEDURAL HISTORY**

On September 10, 2020, Plaintiffs Adrienne Cerulo ("Cerulo"), Finkelstein, Tecku and Tjok filed a Complaint on behalf of themselves and all persons who purchased BPDNs in connection with the PPMs and SNSs. (Compl., ECF No. 4.) Plaintiffs alleged two violations of the Delaware Code against all Defendants and one count of breach of fiduciary duty against Yieldstreet Management. (*Id*. ¶¶ 155-99.) On April 26, 2021, the Court dismissed without prejudice the first two counts of Plaintiffs' three-count complaint on the basis that Delaware law did not apply to this action. *See Tecku v. Yieldstreet, Inc.*, 20-CV-07327 (VM), 2021 WL 1614806, at *1 (S.D.N.Y. Apr. 26, 2021) ("*Tecku I*"). The Court determined that the breach of fiduciary duty claim remained and allowed Plaintiffs to file an amended complaint. *See id*. at *6.

On May 17, 2021, Cerulo, Finkelstein, Tecku and Tjok filed an amended complaint alleging that Defendants' conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, as well as New York law. (*See* Am. Compl., ECF No. 35.) Thereafter, on August 18, 2021, Finkelstein, Tecku and Tjok moved unopposed to correct the amended complaint to remove Cerulo, who no longer wanted to represent the putative class or be identified by name in the complaint. (8/18/21 Mot. to Amend, ECF No. 43.) The Court granted their request. (8/20/21 Order, ECF No. 44.)

Plaintiffs filed the operative CAC, removing Cerulo, on March 31, 2022. (*See* CAC.) The CAC contains seven causes of action: fraudulent inducement (Count One); aiding and abetting fraud (Count Two); violations of Section 10(b) of the Exchange Act and Rule 10b-5 (Count Three); violations of Section 20(a) of the Exchange Act against Weisz only (Count Four); common law breach of fiduciary duty against Yieldstreet Management and Yieldstreet Inc. (Count Five); aiding

and abetting breach of fiduciary duty against Weisz (Count Six); and negligent misrepresentation

against Yieldstreet (Count Seven). (CAC ¶¶ 170-259.) Defendants thereafter sought dismissal of

the CAC and, by Decision and Order, dated May 3, 2022, the Court denied Defendants' motion.

*See Tecku II*, 2022 WL 1322231, at *18.

On May 25, 2022, Plaintiffs Tecku, Finkelstein and Tjok filed a motion to (1) appoint them

as lead plaintiffs in this action, and (2) approve their choice of co-lead counsel for the putative

class. (Pls.' 5/25/22 Mot., ECF No. 55.) By Decision and Order, dated August 22, 2022, the Court

granted in part and denied in part Plaintiffs' motion. *See Tecku v. Yieldstreet, Inc.*, 20-CV-07327

(VM), 2022 WL 3584942, at *1 (S.D.N.Y. Aug. 22, 2022) ("*Tecku III*"). The Court denied Plaintiffs'

motion insofar as they sought to be appointed as a group of lead plaintiffs because Plaintiffs had

not provided a sufficient evidentiary basis for aggregation. *See id*. at *3. In addition, the Court

declined to approve Finkelstein as lead plaintiff, even though he had the largest financial interest,

because the Court found that Finkelstein's claims were not typical of the class. *Id*. at *4. The Court

stated:

> [U]nlike the other purported class members, [Finkelstein] did not invest in
> Yieldstreet's Louisiana Oil & Gas Fund. Finkelstein attests that he purchased one
> BPDN in the offering known as Yieldstreet's Vessel Deconstruction Fund IV. . . .
> Plaintiffs' claims involve misrepresentations affecting investors in both
> Yieldstreet's Louisiana Oil & Gas Fund and its Vessel Deconstruction Funds. . . . As
> such, Finkelstein's claims are not typical of the class.

*Id*. at *4. However, the Court granted the motion to appoint Tjok as lead plaintiff, finding that

"Tjok ha[d] made a preliminary showing that he will adequately protect the interests of the

purported class." *Id*. at *5. Notably, the Court held that Tjok's claims were typical of those of the

class: "Like other class members, [Tjok] alleges that: (1) he purchased BPDNs in Yieldstreet's

Vessel Deconstruction Funds and Louisiana Oil & Gas Fund during the class period; (2) he

purchased shares in reliance on Yieldstreet's misrepresentations in the offering documents for these Funds; and (3) he suffered damages as a result." *Id*. The Court also approved Tjok's choice of co-lead counsel. *Id*.

On February 17, 2023, Plaintiff Tjok filed the motion now before the Court seeking class certification and his appointment as class representative. (Pls.' 2/17/23 Not. of Mot. at 1.) Tjok seeks certification of the following class:

> All persons who purchased a Borrower Payment Dependent Note (BPDN) issued by YS ALTNOTES I or YS ALTNOTES II in connection with the following offerings:
>
> 1. Vessel Deconstruction Fund I;
> 2. Vessel Deconstruction Fund III;
> 3. Vessel Deconstruction Fund IV;
> 4. Vessel Deconstruction Fund VI; and
> 5. Louisiana Oil & Gas.
>
> Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, and any judge to whom this action is assigned and any member of such judge's staff and immediate family.

(*Id*.)

On March 20, 2023, Defendants filed papers in opposition to the motion. (Defs.' 3/20/23 Opp. Mem., ECF No. 97; Tiefenbrun Decl., ECF No. 98.) On April 11, 2023, Plaintiffs filed reply papers. (Pls.' 4/11/23 Reply, ECF No. 99; Centner 4/11/23 Decl., ECF No. 100.) On April 12, 2023, the Honorable Victor Marrero issued an Order referring to me for a report and recommendation the pending motion regarding class certification. (Order of Ref., ECF No. 101.)

On April 14, 2023, Defendants filed a motion to strike Declarations from Tecku and Finkelstein that had been filed as part of Plaintiffs' reply papers. (Defs.' Mot. to Strike.) On April 28, 2023, Plaintiffs filed their memorandum in opposition to such motion. (Pls.' 4/28/23 Opp.

Mem., ECF No. 104.) On May 5, 2023, Defendants filed their reply to Plaintiffs' opposition. (Defs.'
5/5/23 Reply, ECF No. 105.)

### LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on
behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348
(2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court has discretion on
questions of class certification because "the district court is often in the best position to assess
the propriety of the class . . . ." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d
134, 139 (2d Cir. 2001).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Class
certification is appropriate where the proposed class meets, by a preponderance of the evidence
following a court's "rigorous analysis," the requirements of Rule 23(a) of the Federal Rules of Civil
Procedure and the proposed class constitutes one of the types of classes enumerated in Rule
23(b). *See Wal-Mart*, 564 U.S. at 350; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574
F.3d 29, 35 (2d Cir. 2009) (standard of proof applicable to evidence proffered to meet
requirements of Rule 23 is preponderance of the evidence). "Frequently that 'rigorous analysis'
will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S.
at 351.

The district court must "make a definitive assessment of Rule 23 requirements,
notwithstanding their overlap with merits issues, must resolve material factual disputes relevant
to each Rule 23 requirement, and must find that each requirement is established by at least a
preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d

Cir. 2013) (internal quotation marks and alterations omitted). Stated differently, this means that the district court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (citation omitted).

> The four prerequisites of Rule 23(a) are as follows:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

Fed. R. Civ. P. 23(a).

In addition to meeting the requirements of Rule 23(a), the proposed class must constitute one of the types of classes enumerated in Rule 23(b). Plaintiffs have moved for class certification under Rule 23(b)(3). Rule 23(b)(3) provides for class certification if the requirements of Rule 23(a) are met and (i) common questions of fact or law predominate over any individual questions, and (ii) a class action is a superior method of efficiently and fairly adjudicating the matter. *See* Fed. R. Civ. P. 23(b)(3).

### DISCUSSION

The pending motion was filed solely by Plaintiff Tjok "for an order pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure appointing him as class representative . . .." (*See* Pls.' 2/17/23 Not. of Mot. at 1.)

I.        **Standing**

As a threshold matter, Defendants argue that Tjok lacks Article III and class standing in certain respects. (*See* Defs.' 3/20/23 Opp. Mem. at 5-9.) The Court addresses Article III standing and class standing in turn.

A.        **Article III Standing**

"To establish standing to sue a defendant, a plaintiff must: (1) have suffered an injury-in-fact; (2) demonstrate that a causal connection exists between the injury and the conduct of the defendant; and (3) demonstrate the likelihood, and not merely the speculative possibility, that the injury will be redressed by the requested relief." *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made." *Id.* (quoting *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973)).

In order to establish Article III standing in a class action, the named plaintiff class representative (or, in the case of multiple class representatives, one of them) must have a claim against each Defendant. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) ("[T]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)); *see also Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991) ("A plaintiff, including one who is seeking

to act as class representative, must have individual standing to assert the claims in the complaint against each defendant being sued by him."). In the present case, Tjok, the sole Plaintiff who moved for class certification, does not have Article III standing to bring a claim against ALTNOTES II because it was the issuer for only one of five deals at issue, Decon Fund IV (*see* Klopfer Decl., ECF No. 98-1, ¶ 18), and Tjok did not invest in Decon Fund IV. Thus, on the instant motion by Tjok, no class action can be certified against Defendant ALTNOTES II.[3]

> **B.** **Class Standing**

Defendants argue that Plaintiff Tjok lacks standing to be the class representative for claims arising out of Decon Fund IV and Decon Fund VI, since he did not invest in either fund. (*See* Defs.' 3/20/23 Opp. Mem. at 6-9.) In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, the Second Circuit established a two-part test for class standing:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

693 F.3d 145, 162 (2d Cir. 2012) (quotation marks, citations and alterations omitted).

---

[3] In their reply memorandum, Plaintiffs seek to establish standing for claims against ALTNOTES II by offering Plaintiff Tecku, who invested in Decon IV, as an "additional named Plaintiff[] representing the class in this case." (*See* Pls.' 4/11/23 Reply at 4 n.2.) As an initial matter, it was procedurally improper for Plaintiffs to file with their reply papers a declaration from Tecku. *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."); *see also* Individual Practices of United States District Judge Victor Marrero Southern District of New York § II.D.1 ("The Court will not consider new matters raised in replies for the first time."). In any event, the instant motion only was brought by Plaintiff Tjok. Plaintiffs' attempt to add Tecku (and Finkelstein) as additional named Plaintiffs representing the class appears to be an end run around the Court's prior Decision and Order denying Plaintiffs' motion to have Plaintiffs Tjok, Tecku and Finkelstein appointed as a group of lead plaintiffs, *see Tecku III*, 2022 WL 3584942, at *1, which is improper.

Plaintiff Tjok satisfies the first prong of the class standing test by alleging that he lost money in his investments in Decon Fund I, Decon Fund III and the Oil & Gas Fund as a result of conduct by, among others, Yieldstreet Inc., Yieldstreet Management and Weisz. In addition, the injuries alleged to have been suffered by investors in Decon Fund IV and Decon Fund VI arise from similar conduct by those same Defendants. All the offerings at issue (*i.e.*, Decon Fund I, Decon Fund III, Decon Fund IV, Decon Fund VI and the Oil & Gas Fund) were sold by Defendant Yieldstreet Inc. through its online portal and issued by one of its two wholly owned subsidiaries, ALTNOTES I or II. As Plaintiffs assert, each investor in a particular offering received similar PPMs and the SNSs omitted the same material information about material risks associated with each of the offerings—principally, that Yieldstreet's expert advisor had warned Yieldstreet not to issue the loans and misrepresented Yieldstreet's prior principal loss events. (*See* Pl.'s Reply Mem. at 2-5; *see also* CAC ¶¶ 128, 195, 199.) Thus, the Court finds that the alleged conduct implicates the same set of concerns with respect to the three offerings in which Tjok invested and the two offerings in which he did not invest.[4] Accordingly, the Court finds that Plaintiff Tjok has standing to pursue claims in this case, aside from claims against Defendant ALTNOTES II, as to which he lacks Article III standing.

The Court now turns to the issue of class certification under Rule 23 of the Federal Rules of Civil Procedure.

---

[4] In any event, as set forth below, the Court finds that Tjok does not meet the requirements of Rule 23(a) for claims arising out of Decon Fund IV or VI.

II.     **Class Certification**

A.      **Rule 23(a) Analysis**

1.      **Numerosity (Fed. R. Civ. P. 23(a)(1))**

For class certification to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when a class consists of forty members or more. *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). In the present case, the proposed class consists of over 2,200 members. (*See* Centner Decl. Ex. 30, ECF No. 89-18; Ex. 31, ECF No. 89-19.) Thus, numerosity easily is satisfied.

2.      **Commonality And Typicality (Fed. R. Civ. P. 23(a)(2) & (3))**

"The commonality requirement [contained in Rule 23(a)(2)] is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987)). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); *see also Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) ("commonality requirement [is] that there be common issues of law or fact affecting all class members"). "The commonality requirement has been applied permissively in securities fraud litigation," such that "where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Rule 23(a)(3) requires that the class representatives have claims typical of those shared by the class members. "To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *See In re Flag Telecom*, 574 F.3d at 35 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). However, "the typicality criterion does not require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 138 (S.D.N.Y. 2011) (internal citations, quotation marks and emphasis omitted). The typicality requirement is "not demanding." *See Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 523 (S.D.N.Y. 2018) (citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

"[T]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 350 n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

Tjok asserts that common offering documents were disseminated to all putative class members which contained the same or similar misrepresentations and suffered from the same material omissions. (*See* Pl.'s Mem., ECF No. 88, at 14-15.) Although the offering documents for

the funds in which Tjok did not invest (*i.e.*, Decon Fund IV and Decon Fund VI) differ in at least some respects from the offering documents for the funds in which Tjok did invest (*i.e.*, Decon Fund I, Decon Fund III and Oil & Gas Fund), because the offering documents are common in many respects and because there is a "low hurdle" for commonality, *Yi Xiang*, 327 F.R.D. at 522, the Court finds that Tjok has met the commonality requirement.[5]

The Court also finds that Tjok has met the typicality requirement of Rule 23, except with respect to Decon Fund IV. As the Court previously held in this case, "Tjok's claims are typical of the purported class" because he, "[l]ike other class members, [ ] alleges that: (1) he purchased BPDNs in Yieldstreet's Vessel Deconstruction Funds and Louisiana Oil & Gas Fund during the class period; (2) he purchased shares in reliance on Yieldstreet's misrepresentations in the offering documents for these Funds; and (3) he suffered damages as a result." *Tecku III*, 2022 WL 3584942, at *5.[6] The Court finds that Tjok does not satisfy the typicality requirement of Rule 23 with respect to Decon Fund IV, since Tjok lacks Article III standing to assert claims against ALTNOTES

---

[5] In any event, as set forth below, the Court finds the Tjok fails to meet the typicality requirement for claims arising from Decon Fund IV and is not an adequate representative for claims arising from Decon Fund IV or VI. (*See infra*.)

[6] Defendants argue that, because they have certain unique defenses against Tjok, his claims are not typical of those shared by other class members. (*See* Defs.' 3/20/23 Opp. Mem. at 24-25.) Specifically, Defendants argue that Tjok received notice of a borrower default in his Oil & Gas Fund before he invested in Decon Fund III and was told about "no principal loss" by his mentor, which Defendants contend create defenses for them that are unique to Tjok. (*See id.*) The Court finds that these defenses do not "threaten to become the focus of the litigation" and, therefore, do not render Tjok's claims atypical under Rule 23(a)(3). See *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008). Indeed, "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Id.* (internal quotation marks and alterations omitted); *see also Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 93 (S.D.N.Y. 2018) (citing *In re Parmalat Sec. Litig.*, No. 04-MD-01653, 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008) (noting that unique-defense rule not rigidly applied in Second Circuit and generally applied only where full defense available against individual plaintiff's action)).

II, the issuer of Decon Fund IV. *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 589 (S.D.N.Y. 2018) ("[A] purported representative who lacks standing is not a member of the putative class and thus cannot satisfy the typicality or adequate representation requirements." (citing 1 McLaughlin on Class Actions § 4:18 (14th ed.) (Westlaw 2017) (emphasis omitted)).

   **3.    Adequacy Of Representation (Fed. R. Civ. P. 23(a)(4))**

The adequacy of representation inquiry under Rule 23(a)(4) considers whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For class representatives, "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). In addition, courts in this Circuit consider whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation" in assessing adequacy under Rule 23(a)(4). *In re Flag Telecom*, 574 F.3d at 35 (citing *Baffa*, 222 F.3d at 60).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *General Telephone*, 457 U.S. at 157-58, n.13). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up) (citation omitted).

In the present case, having reviewed Tjok's February 17, 2023 Declaration (Tjok 2/17/23 Decl., ECF No. 90-13), the Court finds that he has an interest in vigorously pursuing the claims of

the class with respect to the Funds in which he invested, *i.e.*, Decon Fund I, Decon Fund III and the Oil & Gas Fund. The Court also finds that Tjok's attorneys are qualified, experienced and able to conduct the litigation on behalf of the class with respect to such Funds. *See Tecku III*, 2022 WL 3584942, at *5 ("The Court is persuaded that Peiffer Wolf and Sonn Law can adequately represent the class here."). Thus, Tjok is an adequate class representative for those persons who purchased a BPDN issued by ALTNOTES I in connection with Decon Fund I, Decon Fund III and the Oil & Gas Fund.

However, the Court finds that Tjok not an adequate class representative for those persons who purchased a BPDN issued by ALTNOTES II in connection with Decon Fund IV or who purchased a BDPN issued by ALTNOTES I in connection with Decon Fund VI. With respect to Decon Fund IV, as set forth above, Tjok does not have Article III standing to pursue claims against ALTNOTES II, the entity that issued the BPDNs for Decon Fund IV. Thus, as a matter of law, he does not have an interest in vigorously pursuant claims against ALTNOTES II. In these circumstances, the Court finds that Tjok is not an adequate class representative with respect to Decon Fund IV. *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 589.

In addition, Tjok has interests that are antagonistic to the interests of the claims of the class with respect to Decon Fund IV and Decon Fund VI, in which he did not invest. Plaintiffs allege in the CAC that Yieldstreet "fraudulently induced Plaintiffs by offering BPDNs in the Vessel Deconstruction and Oil & Gas funds without disclosing a number of material facts," including "that all or virtually all of the vessel deconstruction loans Yieldstreet made were placed with the same borrowing group, creating an unreasonable concentration of risk that increased with each subsequent loan." (CAC ¶ 178(vi).) While it is true that the concentration of risk was not disclosed

in the offering documents for the Funds in which Tjok invested, it was disclosed in the SNSs for the funds in which Tjok did not invest.

The SNS for Decon Fund IV states that "Yieldstreet's total outstanding exposure to the Borrower is $86.3M as of May 2019." (*See* Tiefenbrun Decl., Ex. 7, ECF No. 98-7, at 10.) The SNS for Decon Fund VI states that "Yieldstreet's total outstanding exposure to the Sponsor is $74.9M (excluding this transaction) as of August 2019." (*See id*., Ex. 8, ECF No. 98-8, at 10.) The SNSs for the prior Funds in which Tjok invested did not have similar disclosures. (*See*, *e.g.*, Centner Decl. Ex. 9, ECF No. 90-7, at 10; *id.* Ex. 10, ECF No. 90-8, at 10.) As a result, Tjok has an interest in emphasizing Yieldstreet's failure to disclose concentration of risk, while the class members who invested in Decon Fund IV and Decon Fund VI have an interest in arguing that disclosure of concentration of risk is insignificant. Accordingly, Tjok and the class members who invested in Decon Fund IV and Decon Fund VI have antagonistic interests.

### B.  Rule 23(b)(3) Analysis[7]

As set forth above, Plaintiffs may maintain a class action under Rule 23(b)(3) by demonstrating that common questions of fact or law predominate over any individual questions and a class action is a superior method of efficiently and fairly adjudicating the matter. *See* Fed. R. Civ. P. 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp*., 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem*, 521 U.S. at 623). The requirement's purpose is to "ensure[ ] that the class will be

---

[7] Because Tjok has not met all the required Rule 23(a) elements for certification of a class with respect to Decon Fund IV and Decon Fund VI, the Court limits its analysis below to certification of a class under Rule 23(b)(3) with respect to Decon Fund I, Decon Fund III and the Oil & Gas Fund.

certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 104 (2d Cir. 2007)). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (internal citations omitted). "[T]he predominance inquiry is similar to, but more demanding than, the commonality inquiry." *Saleem v. Corp. Transp. Grp., Ltd*., No. 12-CV-08450 (JMF), 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013).

Regarding superiority, Rule 23(b)(3) provides a list of relevant factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The purpose of Rule 23(b)(3) is to limit class certification to cases where "it would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of

22

the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal citations and quotation marks omitted).

Plaintiffs assert seven causes of action in the CAC, many of which have overlapping elements: Count Three of the CAC asserts a claim against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 and Count Four asserts a claim against Defendant Weisz for control person liability under Section 20(a) of the Exchange Act (CAC ¶¶ 193-219);[8] Count One of the CAC asserts a claim against all Defendants for fraudulent inducement and Count Two asserts a claim against all Defendants for aiding and abetting fraud (*id.* ¶¶ 170-92);[9] Count Seven of the CAC asserts a claim against Yieldstreet for negligent misrepresentation (*id.* ¶¶ 254-29);[10] and Count Five of the CAC asserts a claim against Yieldstreet Management and Yieldstreet Inc. for

---

[8] The elements of a private securities fraud claim under Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). In order to establish a prima facie case of control person liability under Section 20(a), the plaintiff must show: (1) a primary violation—such as a Section 10(b) violation—by a controlled entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

[9] Under New York Law (which was the law the Court applied in the Decision and Order denying Defendants' motion to dismiss the CAC, *see Tecku II*, 2022 WL 1322231, at *17), a plaintiff asserting a common law fraud claim must prove by clear and convincing evidence the following elements: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *See Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

[10] To state a claim for negligent misrepresentation under New York law, the plaintiff must prove: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

breach of fiduciary duty and Count Six asserts a claim against Weisz for aiding and abetting breach of fiduciary duty.[11] (*Id*. ¶¶ 220-53.)

With respect to the class of persons who invested in Decon Fund I, Decon Fund III and the Oil & Gas Fund, for all claims other than the breach of fiduciary duty claims, the Court finds that common questions of fact and law predominate over individual questions and that a class action is a superior method of efficiently and fairly adjudicating the matter. A critical part of Plaintiffs' fraud and negligent misrepresentation claims is that Defendants' offering documents omitted or misrepresented numerous material facts, including the following: (1) that the "asset class expert" that provided advice as to how to structure the vessel offerings had warned Yieldstreet not to make the underlying loans (CAC ¶¶ 110, 118); (2) that Yieldstreet's credit committee had no experience vetting or structuring deals in the niche industries in which Yieldstreet products were offered to investors (*id*. ¶ 8); (3) that no one on Yieldstreet's marine finance team had any meaningful experience in the vessel deconstruction industry that would have allowed them to properly vet or structure proposed deconstruction deals (*Id*. ¶ 178(vii)); (4) that no product offered on Yieldstreet's online platform had suffered any principal loss (CAC ¶ 7), and (5) that Yieldstreet had an informed diligence process. (*Id*. ¶ 135.) These misrepresentations and omissions also are common to all persons who invested in Decon Fund I, Decon Fund III and the Oil & Gas Fund.[12]

---

[11] To state a claim for breach of fiduciary duty under New York law, a plaintiff must establish: "(1) the existence of a fiduciary relationship[;] (2) misconduct by the defendant[;] and (3) damages directly caused by [the defendant's] misconduct." *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) (internal citations and quotation marks omitted).

[12] The Court notes that, in *Tecku II*, the Court held that the allegations that satisfy the first element of a fraud claim under Section 10(b) are the "Principal Loss" Statement in the PPMs and the "Diligence Process" Omissions in the SNS for the December 2018 and April through September 2019 Vessel

Defendants argue that the presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), does not apply and that there are individual issues of reliance that predominate, such that certification is not appropriate under Rule 23(b)(3). (*See* Defs.' 3/20/23 Opp. Mem. at 20-23.) The Court disagrees.

In a Rule 10b-5 case, there is a rebuttable presumption of reliance where, as here, there is material information withheld or omitted by an individual who had a duty to disclose the information. *See Affiliated Ute*, 406 U.S. at 154. Defendants' misrepresentations do not render the *Affiliated Ute* presumption inapplicable. As many courts in this District have recognized, the *Affiliated Ute* presumption still can apply when a complaint alleges both misrepresentations and omissions. *See Baliga v. Link Motion, Inc.*, No. 18-CV-11642 (VM), 2022 WL 16707361, at *11 (S.D.N.Y. Nov. 4, 2022) ("There is ample support . . . for the proposition that *Affiliated Ute* applies even "when a complaint alleges both misstatements and omissions."); *see also Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 216 (S.D.N.Y. 2021) (collecting cases). Here, Plaintiffs' claims are based on both the misrepresentations and the omissions alleged in the CAC.

In addition, the misrepresentations alleged in this case were made in written offering documents to investors, thus warranting class treatment. "[F]raud claims based on uniform misrepresentations made to all members of the class . . . are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002); *see also In re U.S.*

---

Deconstruction Fund offerings. *Tecku II*, 2022 WL 1322231, at *10. However, the Court found that Yieldstreet's alleged inexperience in marine deconstruction deals was not an actionable omission. *See id*.

*Foodservice Inc. Pricing Litig.*, 729 F.3d at 118 ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of minitrials.") (internal quotation marks omitted).

With respect to the breach of fiduciary duty claims (Counts Five and Six), putting aside the issue of the merit of such claims,[13] the Court finds that Plaintiffs have not met the predominance requirement of Rule 23(b)(3). As this Court previously held, "[t]he existence of a fiduciary duty is a question of fact that depends on the circumstances, principally the nature of the advice given." *Tecku I*, 2021 WL 1614806, at *6 (citation omitted). "Generally, an investment advisor owes a fiduciary duty to a person if the advisor 'provide[s] personalized advice attuned to a client's concerns, whether by written or verbal communication.'" *Id*. (citation omitted). The issues regarding whether a whether a fiduciary duty exists for each investor requires an individualized, personalized inquiry for each investor. The Court finds that these issues predominate over any common issues with respect to the breach of fiduciary duty claims.

## III.    Motion To Strike

Defendants move to strike the declarations of Tecku and Finkelstein. (Tecku Decl., ECF 100-1; Finkelstein Decl., ECF No. 100-2.) As set forth in footnote 3, *supra*, it was procedurally

---

[13] The Court previously noted on two occasions its skepticism about the breach of fiduciary duty claim. *See Tecku I*, 2021 WL 1614806, at *6 ("While the Court is skeptical that Yieldstreet Management owed a fiduciary duty to Plaintiffs, at this early stage of the litigation the Court is persuaded it is at least plausible."); *Tecku II*, 2022 WL 1322231, at *17 ("For the reasons stated in the [Court's prior] Order, and with the same skepticism that this claim [against Yieldstreet Inc.] will survive at a later stage, dismissal at this stage would be premature.").

improper for Plaintiffs to file these declarations with their reply papers. Nevertheless, the Court finds no reason why these declarations should not remain part of the record. *See United States ex rel. Yu v. Grifols USA, LLC*, No. 17-CV-02226 (GHW), 2021 WL 4429375, at *2 (S.D.N.Y. Sept. 26, 2021) (court can decline to consider document when deciding motion, but that document may remain part of record). Accordingly, Defendants' motion to strike should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for class certification be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that the following class be certified with respect to all claims in the CAC, except for Counts Five and Six: All persons who purchased a Borrower Payment Dependent Note (BPDN) issued by YS ALTNOTES I in connection with the following offerings: (1) Vessel Deconstruction Fund I; (2) Vessel Deconstruction Fund III; and (3) Louisiana Oil & Gas Fund, excluding Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, and any judge to whom this action is assigned and any member of such judge's staff and immediate family. I also recommend that Defendants' motion to strike be DENIED.

Dated:      New York, New York
            May 26, 2023

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Marrero.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).