## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MICHAEL TECKU; DAVID FINKELSTEIN;** | ) | |
| **And LAWRENCE TJOK;** | ) | |
| **Individually and on behalf of** | ) | |
| **all others similarly situated** | ) | **Case No.  1:20-CV-07327 (VM)** |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| **YIELDSTREET, INC.; YIELDSTREET** | ) | |
| **MANAGEMENT, LLC; YS ALTNOTES I, LLC** | ) | |
| **YS ALTNOTEES I, LLC; AND** | ) | |
| **MICHAEL WEISZ.** | ) | |
| | ) | |
| *Defendants.* | ) | |

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

Respectfully submitted by:

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Daniel Centner, Esq.
Joseph Peiffer, Esq.
935 Gravier St., Suite 1600
New Orleans, LA 70112
Telephone: (504) 523-2434
Facsimile: (504) 608-1465
jpeiffer@peifferwolf.com
dcentner@peifferwolf.com

**SONN LAW GROUP PA**
Jeffrey R. Sonn, Esq.
Brian B. Pastor, Esq.
One Turnberry Place
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180
Telephone: (305) 912-3000
Facsimile: (786) 485-1501
jsonn@sonnlaw.com bpastor@sonnlaw.com
service@sonnlaw.com

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. SUMMARY OF THE ACTION .............................................................................2

    A.  This settlement was only reached after a lengthy hard-fought process during which the Parties developed a significant legal and factual record, and only after extensive arms-length mediated negotiations. ............................................6

III. SUMMARY OF THE SETTLEMENT .......................................................................8

    A.  Monetary and Economic Benefit ...................................................................8

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................9

    A.  The Standards for Reviewing a Proposed Settlement for Preliminary Approval ........................................................................................................9

    B.  The Settlement Satisfies Each of the Rule 23(e)(2) Factors ............................10

        1.  Plaintiff and Counsel Have Adequately Represented the Class -23(e)(2)(A)..................................................................................10

        2.  The Proposed Settlement Was Negotiated at  Arm's Length - 23(e)(2)(B)..................................................................................11

        3.  The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal -23(e)(2)(C)(i) ........................ 13

        4.  The Proposed Method for Distributing Relief Is Effective - 23(e)(2)(C)(ii)...........................................................................15

        5.  Attorneys' Fees ..................................................................................... 16

        6.  The Parties Have No Side Agreements Aside from a Standard Supplemental Agreement Regarding Exclusions ...........17

        7.  Settlement Class Members Are Treated Equitably................................16

    C.  The Settlement Satisfies The 9 *Grinnell* Factors.................................................17

        1.  The Complexity, Expense, and Likely Duration of the Litigation, the Risks of Establishing Liability, and the Risks of Establishing Damages All Support Approval of the Settlement All Support Approval of the Settlement - *Grinnel* Factors 1, 4, 5 and 6................ 18

        2.  The Stage of the Proceedings and the Amount of Discovery Completed *Grinnel* Factor 3....................................................................19

3.  The Ability of Defendants to Withstand a Greater Judgment
    - *Grinnel* Factor 7 ...................................................................................19

4.  The Reasonableness of the Settlement Fund in Light of the Best
    Possible Recovery (Grinnel factor 8), and the range of
    reasonableness of the settlement fund to a possible recovery
    in light of all the attendant risks of litigation (Grinnel factor
    9) are satisfied. .................................................................................20

V.  THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE
    PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED .............22

    A.  Proposed Claims Administrator.........................................................22

    B.  Manner of Notice ..............................................................................22

    C.  Form of Notice ..................................................................................24

    D.  CAFA Notice .....................................................................................25

    E.  PROPOSED SCHEDULE ..................................................................25

    F.  CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizen v. United States*,
    406 U.S. 128 (1972)……………………………………………………………..6

*Bourlas v. Davis L. Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006)............................................................................23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..................................................................................8

*City of Providence v. Aeropostale, Inc.*,
    Fed. Sec. L. Rep. P 97958, 2014 WL 1883494 (.N.Y., 2014),
    *Aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ....................17

*Fogarazzo v. Lehman Bros., Inc.*,
    2011 WL 671745 (S.D.N.Y., 2011)........................................................................17

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y., 2019) ......................................................................12

*Hesse v. Godiva Chocolatier, Inc.*,
    2021 WL 11706821(S.D.N.Y., 2021).......................................................................12

*Hicks v. Stanley*,
    2005 WL 2757792 (S.D.N.Y., 2005) ......................................................................13

*Hunt v. Check Recovery Sys., Inc.*,
    2007 WL 2220972 (N.D. Cal, 2007).......................................................................23

*Hunt v. Imperial Merch. Servs., Inc.*,
    560 F.3d 1137 (9th Cir. 2009) ...............................................................................23

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................15

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) .........................................................................20

*In re Alloy, Inc. Sec. Litig.*,
    2004 WL 2750089 (S.D.N.Y., 2004) ......................................................................13

*In re American Bank Note Holographics, Inc.*,
    127 F.Supp. 2d 418 (S.D.N.Y.2001) .......................................................................13

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y., 2006) ........................................................................13

*In re Celera Corp. Sec. Litig.*,
  2014 WL 722408 (N.D. Cal. Feb. 25, 2014)............................................................21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................17

*In re Global Crossing Securities and ERISA Litigation*,
  225 F.R.D. 436 (S.D.N.Y. 2004)............................................................................20

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................10, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. 2003) ....................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)..............................................................................18

*In re Rite Aid Corp. Sec. Litig.*, 1
  46 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................21

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. 2020) ......................................................................12

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274, 281 (S.D.N.Y. 1999) ....................................................................13

*In re Zynga Sec. Litig.*,
  2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ............................................21

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010)............................................................................. 25

*Medina v. NYC Harlem Foods Inc.*,
  2024 WL 230745 (S.D.N.Y., 2024) .......................................................................10

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...................................................................................20

*Reyes v. Summit Health Mgmt., LLC*,
  2024 WL 472841  (S.D.N.Y. 2024) ........................................................................10

*Solis v. Orthonet LLC*,
  2021 WL 2678651 (S.D.N.Y. June 30, 2021) ........................................................17

*Toler v. Glob. Coll. of Nat. Med., Inc.*,
  2015 WL 13037116, at *2 (E.D. Mich. May 19, 2015) ...........................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

396 F.3d 96, 2005 WL 15056 (2nd Cir. (N.Y.), 2005) ................................................24

**<u>OTHER AUTHORITIES</u>**

William B. Rubenstein, *Newberg on Class Actions*
(5th ed. 2011) .............................................................................................................24

Lawrence Tjok, Plaintiff and Certified Class Representative, by and through the undersigned counsel for Plaintiff and the Certified Class (also referred to herein and in the Stipulation as the "Settlement Class"), respectfully submits this Memorandum of Law in support of the Unopposed Motion for an Order: (i) preliminarily approving the proposed settlement ("Settlement") between the Settlement Class and Defendants; (ii) approving the form, manner and timing of the notice to the Settlement Class; and (iii) setting a final hearing for this Court's judgment on the fairness of the settlement and Class Counsels' application for an award of attorney fees and expenses.

## I.    INTRODUCTION

Plaintiff, on behalf of the Class, and Defendants (together, the "Settling Parties" or "Parties") reached an agreement to resolve this securities class action (the "Action") for $6,200,000.00 cash, plus $2,750,000.00 in Forgiven Fees that will be waived should future collections/recoveries be obtained for the offerings certified in the Action (the "Settlement Amount").  In addition, the Settlement provides each Settlement Class Member retains rights to their investments, including the right to recovery from multiple sources that are being actively pursued.[1]  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement and Release ("Stipulation"). *See* Exh. 1.

The Parties reached this settlement after almost four full years of hard-fought litigation that included:  pre-litigation investigation; multiple complaints; multiple motions to dismiss;

---

[1] This includes: YieldStreet's pursuit of collection on an $76.7 million judgment against the principals of the defaulting borrower (the "Lakhanis") on their personal guarantees; an ongoing lawsuit for approximately the same amount against insured loan originator Four Wood that includes claims for the investments in issue; and a newly filed lawsuit against international law firm Stephenson Harwood for legal malpractice arising out of that firm's conduct on all the marine deconstruction offerings, including the offerings at issue.  There are no guarantees YieldStreet's future recovery efforts will result in recovery for the offerings, however, the Court can readily see that the $6,200,000 cash component, a 12.29% recovery on net losses is already more than 2x the typical securities class action settlement.

completion of extensive fact discovery involving over *660,000 pages* of potential evidence that Class Counsel sought and obtained from Defendants, third parties, and named Plaintiffs; eight depositions in the case itself; additional depositions and extensive sworn testimony obtained from offering-related legal proceedings that took place inside and outside the United States; complex factual issues that involved documents and potential witnesses located in multiple countries; extensive motions and briefs in the record including a successful class certification; and extensive arms-length negotiations conducted over multiple weeks through Jed D. Melnick with JAMS, a nationally recognized leading mediator of complex securities class actions.

Plaintiff and Class Counsel, based on their experience, evaluation of the facts and applicable law, evaluation of the Settlement Amount and terms, and the risk and expense of continued litigation, submit that the proposed Settlement is fair, reasonable, and adequate. As shown below, the requirements of Rule 23(e) and the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) are met, and therefore, the Court is "likely to approve the settlement," the applicable standard. Granting preliminary approval is proper and fully warranted.

## II.    SUMMARY

As alleged in the Corrected Amended Complaint, and as argued in briefs of record including Plaintiff's Motion for Class Certification and exhibits thereto, Yieldstreet creates and markets investments to retail accredited investors through its proprietary internet platform, Yieldstreet.com. Yieldstreet aggregates accredited investors' money, and through "Special Purpose Vehicles" ("SPVs"), investors' money is loaned to borrowers in a wide variety of industries (in this case, marine vessel deconstruction and oil and gas production). Yieldstreet sells individual investors illiquid "borrower payment dependent notes" ("BPDNs") through Yieldstreet's online platform.   Payment on the BPDNs is dependent on the undisclosed

borrowers' repayment of the underlying loan. The goal for each BPDN investor is for the undisclosed borrower to repay the principal and interest on the loan in full, and as a result, for the investor to receive a profitable return on investment. Yieldstreet's offering documents represented to investors that the BPDN investments in this case had multiple protections, including being "over" collateralized with priority liens on the underlying assets, personal guarantees, and insurance. Yieldstreet represented to investors that there were significant additional investor protections in place. These representations included that Yieldstreet itself would perform due diligence into the experts it engaged (which it refers to as "Originators"), that Yieldstreet would rely on its expert Originators after Yieldstreet vetted them, and that Yieldstreet would vet and approve each offering/transaction through its credit committee, before they were offered to accredited retail investors on Yieldstreet's platform.

Plaintiff contends that in early 2020 Yieldstreet's six outstanding maritime deconstruction offerings, which had been made to the same unidentified borrower, defaulted and caused Yieldstreet investors approximately $87 million dollars in losses. Yieldstreet also sustained a $12 million dollar borrower default in its Louisiana Oil and Gas offering in 2019[2], and by 2020, that borrower had filed for bankruptcy.[3]

Plaintiffs filed this class action on September 9, 2020[4], asserting claims and requesting relief for investor losses with respect to five Yieldstreet "Vessel Deconstruction" offerings, and the Louisiana Oil and Gas offering. Plaintiffs alleged Yieldstreet intentionally and negligently made multiple affirmative misrepresentations and omissions to investors that included: (i) prior to the offerings, no offering made by Yieldstreet had suffered a principal loss; and broadly amongst

---

[2] The Louisiana Oil and Gas offering was made under the same document, AltNote I, that governed the maritime deconstruction loans.
[3] By 2020, the defaulting borrower was in bankruptcy and there were significant legal issues surrounding liens and the ability to collect on the underlying collateral.
[4] The operative Corrected Amended Complaint is at DE51.

other allegations (ii) that Yieldstreet failed to disclose that its founder unilaterally made credit and underwriting decisions instead of the promised credit committee; (iii) the credit committee disregarded warnings and advice of Yieldstreet's own experts; and (iv) the credit committee and Yieldstreet failed in performing due diligence of the borrowers, guarantors, and many aspects of the transaction itself.  Yieldstreet represented it exercised final and absolute discretion whether to offer each and every loan-based offering on its platform.

Plaintiffs' specific allegations included: that Yieldstreet represented it relied on its experts including its loan originator Four Wood, yet disregarded substantial warnings made by Four Wood; that Yieldstreet represented the offerings would go through a credit committee, but instead, fundamental changes in the loan structure and key decisions were not made by a credit committee, but rather by just one person, its President Michael Weisz; that Yieldstreet failed to disclose the inadequacy of the personal guarantees offered by the individuals in the maritime deconstruction loans; the loans were overconcentrated in one borrower; and that Yieldstreet's change to the loan structure was motivated by Yieldstreet's financial interests.  Plaintiffs also alleged that Yieldstreet's credit committee negligently performed due diligence based on a number of factors, including its members' lack of experience in making maritime deconstruction loans.  Substantially identical allegations were made with respect to the Louisiana Oil and Gas offering with respect to the no principal loss misrepresentation, and the failure to properly vet the transaction.  Plaintiffs' operative complaint, at DE 51, included claims of violation of Rule 10b-5, negligent misrepresentation, fraud, aiding and abetting fraud, and included a claim against Yieldstreet's President Michael Weisz for control person liability. *See also* Plaintiff's Memorandum in Support of the Motion for Class Certification at DE 88 and Exhibits thereto at DE 89, 90, and 90-1 through 90-14, and Reply Brief at DE 99 in support of the above recitation of allegations and claims.

After extensive motion and briefing, this Court certified a class with respect to: Vessel

Deconstruction I (YS GM MarFin II LLC); Vessel Deconstruction III (YS GM MF VII LLC); and Louisiana Oil and Gas (YS ARNA OGFin I LLC). *See* DE 139. The total alleged principal loss of the Certified Class in these three certified offerings is $50,459,722 million dollars.

Throughout the proceedings, Defendants maintained that Plaintiffs' claims would ultimately fail as a matter of law and fact. A careful assessment of these defenses is among the reasons why Plaintiffs favor the proposed Settlement. Yieldstreet established in a London action that it was the victim of a highly complex and massive fraud by the borrowers in the marine deconstruction offerings upon which this case is based[5], and Yieldstreet was also a victim of fraud by the borrower in the Louisiana Oil and Gas Offering.[6] Yieldstreet was not alone in being defrauded—other sophisticated large lenders were likewise defrauded by the same marine borrower, in the same scheme, with respect to many of the same ships.[7] Yieldstreet obtained an Order from High Court of England and Wales freezing the assets of the fraudster borrowers in the marine offerings (the Lakhanis), ordering the Lakhanis to pay Yieldstreet nearly $80 million to repay the loans. With respect to the Louisiana Oil and Gas Offering, Yieldstreet obtained a settlement of $6 million from the borrower.

Yieldstreet contended that to prevail, Plaintiffs would need to overcome Yieldstreet's evidence that disclosures at issue were true at the time made. Yieldstreet stated that the "no principal loss" is pulled from a warning that investors could lose principal. Yieldstreet argued that Plaintiffs could not show that there had been a "principal loss" on any BPDNs at the time of the

---

[5] The Defendants produced discovery to show that to steal the money, the Lakhanis used false vessel registrations, false sales invoices, duplicate financing, and potentially corrupt government officials to carry out their scheme. They changed the names of the secured vessel collateral and "dual-flagged" vessels on multiple foreign government registries (the marine equivalent of a registry of deeds). As a result, YieldStreet's senior secured mortgages never appeared on the second, fraudulent set of foreign government official records—allowing the Lakhanis to sell YieldStreet's collateral to third-party scrap yards without anyone knowing about the mortgages.

[6] YieldStreet contended it was the victim of fraud in the Louisiana Oil and Gas offering because the borrower misrepresented the oil and gas field production numbers.

[7] Defendants maintained leading maritime lenders Apollo-backed Njord, Oaktree, and Fleetscape were defrauded in the very same scheme, and duped into financing the very same vessels.

statements.  Yieldstreet contended that evidence demonstrates that Yieldstreet conducted extensive due diligence on the originators, offerings, and borrowers; employed best-in-class experts to underwrite, service, and monitor the loans and collateral; and independently monitored the investments in a manner consistent with Yieldstreet's obligations.

Yieldstreet pointed to hundreds of thousands of pages it turned over to Plaintiffs and the SEC.  In settling, Plaintiffs took into consideration that at the end of a multi-year SEC investigation into the five maritime deconstruction offerings in Plaintiffs' complaint, the SEC decided not to pursue any civil or criminal actions with respect to four of the five offerings.  With respect to the fifth maritime deconstruction offering, which was not part of the Certified Class, the SEC found that Yieldstreet had not maintained adequate due diligence files, and had not warned investors of facts that Yieldstreet became aware of only *after* the two maritime offerings certified in this case had been made.  Although the SEC's judgment is of course not dispositive, given the depth of that investigation, it was taken into account.

Yieldstreet contended that Plaintiffs would need to overcome reliance and causation issues and the Court's ruling that Plaintiffs were <u>not</u> entitled to a presumption of reliance under *Affiliated Ute Citizen v. United States*, 406 U.S. 128 (1972) was detrimental to such proof.   On reliance and causation, Yieldstreet showed that the Offering Documents specifically warned these investors that the investments were highly risky, and that the investments could be lost as a result of fraud by the borrowers, which in fact happened;  that  class members' chose to invest based on purely personal reasons, such as the recommendation of family and friends, or personal understandings of the popularity of the underlying investments at issue in this case; and that 43% of investors continued to invest with Yieldstreet <u>despite knowing</u> of the prior maritime defaults.

Yieldstreet asserted that Plaintiffs' claims would fail due to lack of scienter or intent. Yieldstreet stated it acted in good faith throughout the marine offerings, and that its own founders

and several top executives invested millions of dollars of their own personal money into the very same offerings as the Settlement Class.  Yieldstreet provided evidence that it sought out and retained best-in-class experts to keep these investments safe, including Four Wood—a supposed expert advisor on marine finance transactions—and Stephenson Harwood—a world-leading marine law firm.  At trial, Yieldstreet maintained it would demonstrate the sophistication of the Lakhanis' fraud, including the fact that the Lakhanis successfully deceived several other experienced marine finance lenders.

Yieldstreet contended that Plaintiffs had a limited number of investor witnesses to prove their case and that Four Wood associated witnesses were vulnerable to material impeachment. Finally, Yieldstreet contended that this is not a case where Defendants profited from the alleged misconduct because Yieldstreet's own compensation is heavily backloaded and tied to the ultimate performance of the offerings.

Throughout, Plaintiff vigorously disputed Yieldstreet's defenses and contentions. Nevertheless, Plaintiff acknowledges the real possibility that, absent settlement, a jury could have been persuaded by Yieldstreet's arguments and evidence.

### A. This Settlement was only reached after: (i) a lengthy hard-fought process; (ii) during which the Parties developed a significant legal and factual record; and (iii) only after extensive arms-length mediated negotiations.

Plaintiffs initiated this Action in September 2020. The record and the attached the Declaration of Class Counsel demonstrate that the Parties engaged in vigorous dispute and deep development of the issues over the past four years. *See ¶*25 Declaration of Class Counsel at Exhibit 4. This is reflected in the plethora of filings, including but not limited to: multiple complaints; multiple motions to dismiss brought and resisted; discovery motions; appointment of the Class Representative and Class Counsel; multi-year discovery and multiple motions to compel; documents exchanged and obtained between the Parties and obtained from third-parties; the

7

660,000+ pages of potential evidence Class Counsel obtained; and extensive briefing in the aforementioned efforts and the eight depositions taken. *See ¶*25 Declaration of Class Counsel at Exhibit 4.

Plaintiff's litigation also included significant investigation and review of related domestic and international proceedings, and sworn testimony obtained therefrom that included: sworn testimony from the SEC investigation; sworn statements and litigation documents from Yieldstreet's successful London, England action against the borrowers; sworn deposition and statements from Yieldstreet's SDNY action to conduct international discovery; litigation filings from the above, as well as filings obtained from Yieldstreet's lawsuits against Four Wood, the Lakhanis (the borrowers here), filings related to the RideShare offerings and an Art Fund; litigation related to the Louisiana Oil and Gas Fund; litigation related to Yieldstreet's efforts to collect on insurance on the ships; and more. In addition to the extensive efforts above, Plaintiffs obtained expert opinions in anticipation of summary judgment and trial. Only after four years of development of the evidence, and an extensive record of motions and briefing, and successful class certification, did the Parties engage in mediated settlement negotiations. The mediation negotiations took place over a lengthy seven week-plus period, which culminated in this Settlement.[8] [9]

## III.    SUMMARY OF THE SETTLEMENT

### A.  Monetary and Economic Benefit

Under the terms of the settlement, Defendants will pay $6,200,000.00 cash, plus Defendants will waive $2,750,000.00 in accrued fees against future collections/recoveries obtained for the

---

[8] The mediation was conducted through an independent, reputable and experienced securities class action mediator Jed D. Melnick. There were significant challenges that included: deeply entrenched opposing legal and factual positions as well as the Defendants' ability to overcome very difficult and complex insurance issues surrounding whether <u>any</u> of Defendants' three insurers would agree to contribute towards a settlement.

[9] *See ¶*31 and *¶*35 Declaration of Class Counsel at Exhibit 4.

certified offerings, and each Settlement Class Member will retain their rights to their investments, including the right to recover from the multiple sources Yieldstreet is pursuing.[10]  The terms of the Settlement are set forth in the Stipulation. *See* Exh. 1.

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A. The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Federal Rule of Civil Procedure 23(e) sets out a two-stage approval process: (1) preliminary approval; and (2) a final approval fairness hearing.  Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." Fed. R. Civ. P.23(e)(2).  Preliminary approval is subject to a "likelihood standard". The Court assesses whether the parties have shown that "the court will likely be able to grant final approval and certify the class." *In rePayment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 28 n.21 (E.D.N.Y.2019).  In weighing preliminary approval, the Court:

> When reviewing a proposed class action settlement, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). In addition to these four factors, courts in the Second Circuit also consider the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[1] which overlap with Rule 23(e)(2)(C)–(D). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

---

[10] This includes: pursuit of collection on a $76.7 million dollar English court judgment against the "Lakhanis" on their personal guarantees; an ongoing lawsuit YieldStreet has against loan originator Four Wood pending in the New York Supreme Court; and a newly filed lawsuit against international law firm Stephenson Harwood which had significant due diligence and contract structuring roles in the offerings in issue.

*Medina v. NYC Harlem Foods Inc.,* 2024 WL 230745, at \*2 (S.D.N.Y. Jan. 22, 2024). *See also*

*Reyes v. Summit Health Mgmt., LLC,* 2024 WL 472841, at \*2 (S.D.N.Y. Feb. 6, 2024) (footnotes

omitted). *See also In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)

(applying Rule 23(e) and nine factors set out in *Grinnel*).

The settlement satisfies both Rule 23(e) and the *Grinnel* factors, and therefore warrants

preliminary approval.

### B. The Settlement Satisfies Each of the Rule 23(e)(2) Factors

#### 1. Plaintiff and Counsel Have Adequately Represented the Settlement Class-23(e)(2)(A)

Plaintiff and Class Counsel adequately represented the Settlement Class by diligently

prosecuting this Action, including, but not limited to:

i. investigating the relevant factual events;

ii. filing multiple amended complaints that fairly alleged facts and colorable 10b-5 and common law claims;

iii. successfully opposing Defendants' two motions to dismiss;

iv. taking and defending seven depositions, and participating in an eighth third-party deposition;

v. subpoenaing and receiving documents from multiple third parties; producing thousands of documents to Defendants from Plaintiffs' records;

vi. spending significant time, effort and expense in searching and reviewing through approximately 660,000 pages of often highly complex, dense documents, received from Defendants and third parties;

vii. reviewing multiple SEC/Yieldstreet "On the Record" sworn testimony, as well as reviewing depositions and sworn testimony/evidence given in other civil proceedings related to the Settlement Class offerings such as the offering related §1782 proceeding filed in the Southern District of New York and Yieldstreet's London action[11], a lawsuit against Yieldstreet's insurers for losses arising from the fraudulent borrower's conduct;

viii. investigating and reviewing multiple other lawsuits related to the claims and offerings in issue including lawsuits against the Originator Four Wood directly related to the

---

[11] YieldStreet obtained a $76.7 million dollar judgment against the defaulting parties' personal guarantors.

offerings in issue, lawsuits against and related to the defaulting borrowers guarantors (the Lakhanis), and multiple lawsuits arising from prior and contemporanous Yieldstreet offering defaults (the RideShare default, the Louisiana Oil and Gas default, and the Art Fund default);

ix.    filing a motion and brief for putative approval of class representative; filing multiple successful motions and memorandum to compel discovery; and filing successful motions and memorandum in support of class certification;

x.    consulting with numerous potential experts; and retaining and receiving an expert report in anticipation of motion for summary judgment and trial; and

xi.    engaging in over seven weeks of extensive negotiations at significant time, expense and effort, in which Plaintiff prepared and provided Defendants and the mediator a comprehensive mediation statement supported by multiple key exhibits.

Class Counsel has demonstrated the necessary qualifications and skill in this matter through their prior results and experience (DE 67), and their work on this case which resulted in a successful mediated settlement.  Class Representative and Class Counsels' achievement of a $6,200,000 million cash settlement, plus retention of all rights to their BPDN investment rights for additional potential recovery from guarantors and third parties, plus the benefit of $2,750,000 in Forgiven Fees otherwise chargeable against future recoveries for their investments, represents an excellent result for the Settlement Class.[12]  The $6,200,000 alone, at a 12.29% recovery, represents an excellent result for the Settlement Class given all considerations. [13]

### 2.  The Proposed Settlement Was Negotiated at Arm's Length- 23(e)(2)(B)

The Parties reached this Settlement only after experienced lead counsel for both sides conducted extensive arms-length negotiations through independent mediator Jed D. Melnick[14], a

---

[12] *See* ¶29 Declaration of Class Counsel at Exhibit 4.
[13] *See* ¶29 Declaration of Class Counsel at Exhibit 4.
[14] Jed D. Melnick's bio is available at https://www.jamsadr.com/melnick/ "Since becoming a full-time mediator in 2005, Jed has resolved over one thousand disputes, with an aggregate value in the billions of dollars. Specifically, Jed has extraordinary skill in resolving multi-party complex disputes, especially when they involve highly sensitive issues and difficult parties." "Jed has also twice been awarded the distinction of ADR Champion by *The National Law Journal,* as well as being invited to speak about "Mediation Strategies for Judges" as the closing presenter at the annual Delaware Judiciary retreat."

nationally recognized leading mediator of complex securities class actions. The mediated negotiations started on June 11, 2024 at an all-day session at JAMS' offices in New York City. Lead counsel for Plaintiffs and Defendants personally attended, as did other stakeholders including Defendants' executives, and Defendants' insurers and representatives. Negotiations continued after June 11, 2024 for over seven weeks (all through the mediator). The Parties reached the Settlement only upon Jed Melnick's recommended <u>final</u> "Mediator's Proposal".[15] The final "Mediator's Proposal" represented Mr. Melnick's own independent and experienced view of where the case should settle in light of all the claims, defenses, insurance issues, risks to of success and loss to both sides, as well as other critical issues.

The fact that the Parties' negotiations were conducted through experienced lead counsel, a highly reputable and experienced class-action mediator, and that the Settlement was the product of a mediator's proposal recommendation, is compelling evidence that the Settlement was a genuine arms-length compromise, and not the product of collusion. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("This presumption of fairness and adequacy applies here because the Settlement was reached by highly experienced, fully informed counsel after extensive arm's-length negotiations with the assistance of well-regarded mediators."); *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) ("In fact, the Settlement is the product of a mediator's recommendation by Judge [Layne] Phillips.").[16]

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal-23(e)(2)(C)(i)

---

[15] *See* ¶31 Declaration of Class Counsel at Exhibit 4.
[16] *See also Guevoura Fund*, 2019 WL 6889901, at *6 ("The active involvement of experienced and independent mediators in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness"); *Hesse v. Godiva Chocolatier, Inc.*, No. 2021 WL 11706821, at *2 (S.D.N.Y. Oct. 26, 2021) ("involvement of experienced mediator "strong indicator of procedural fairness").

The Court balances the benefits afforded to the Settlement Class against the significant costs, risks, and delay of proceeding with this Action through trial and appeal. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). Securities class actions in general, and this case in particular, present significant risks during motions and at trial, and further, present significant risks of delay and uncertainty. This case, not including pre-lawsuit investigation, has already taken four years, and was in the expert discovery phase, before settlement talks even began. In the absence of approval, the class could expect it to take multiple additional years before <u>both</u> trial, and inevitable appeals would conclude. In addition to the time, the class faces risks of potentially unfavorable outcomes at various stages to come: summary judgment; expert and non-expert evidentiary disputes; upon trial and appeals. *See In re Alloy, Inc. Sec. Litig.,* No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement and noting that the action involved complex securities issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *See In re AOL Time Warner, Inc.,* No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) ("Due to its notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials.") (Citing *Hicks v. Stanley,* 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005); *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, 424 (S.D.N.Y. 2001); *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

Plaintiff believes in the class claims. Nevertheless, there are significant hurdles including summary judgment, experts and Daubert motions, motions in limine, and multiple challenges upon trial which could result in a defense verdict.[17] Defendants raised multiple defenses to the Corrected Amended Complaint in filings that the Court may have accepted at summary judgment or a jury may have accepted at trial. In the absence of settlement, a jury could well have accepted

---

[17] *See* ¶44 Declaration of Class Counsel at Exhibit 4.

any one of Defendants contentions that: (1) causation and reliance are lacking because, 43% of Settlement Class Members continued to invest with Yieldstreet after the offerings in issue defaulted, the founders and executives in Yieldstreet invested and lost their personal money into the marine deconstruction offerings, and the Class Representative was aware of both the RideShare default and the Louisiana Oil and Gas default prior to investing in later offerings in issue, undercutting Plaintiffs' reliance claims; (2) that Yieldstreet conducted its own extensive due diligence and that it relied on best-in-class experts for additional due diligence, and that the fraud that caused the offerings to go into default, was so incredibly sophisticated, it fooled not just Yieldstreet, but Yieldstreet's experts and three unrelated sophisticated lenders who loaned money on the very same ships involved in the marine deconstruction offerings; (3) the SEC chose not to pursue Yieldstreet on the offerings in issue after extensive discovery and on-the-record sworn testimony by Yieldstreet's executives and its Originator Four Wood; and (4) that the Settlement Class investors were explicitly warned their investment could be lost as a result of the risk of borrower fraud in the offering documents.  If Defendants prevailed on any of these grounds, the entire case would be lost.

Plaintiff's claims would have also been subject to an unpredictable "battle of the experts" over principal loss, risk disclosures, and more.  Plaintiff's case was susceptible to a danger inherent in reliance on expert witness testimony, including that the admissibility of expert opinions subject to Daubert challenges.  If the Court ruled unfavorably on summary judgment, various evidentiary issues, or admissibility of expert opinions, in the absence of a settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the total Settlement Amount, or nothing at all. *See Grinnell*, 495 F.2d at 463 (in assessing the Settlement, the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a significant recovery, against the risk of trial).

Indeed, if the Class Representative and the Settlement Class managed to obtain any recovery at trial, Defendants' inevitable appeals would have put that recovery at risk, while entailing further delay and expense. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) (approving settlement in light of "the risks, complexity, duration, and expense of continuing litigation," including defendants' likelihood of appeal).

For the preceding reasons, when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, the $6,200,000.00 cash recovery weighs in favor of preliminary approval of the Settlement, particularly in light of the much higher than average settlement the recovery percentage represents. *See Supra – Grinnel* 8TH and 9th factors.

### 4. The Proposed Method for Distributing Relief Is Effective 23(e)(2)(C)(ii)

Each Settlement Class Member's calculated *pro-rata* share of the settlement proceeds is based on each member's Net Loss[18], and no proof of claim will be required because the parties have a high degree of confidence each class member can be contacted by e-mail and/or physical mail and the class members' share of the settlement will be successfully delivered to them.[19] EisnerAmper, a highly reputable national claims administrator, noted below, will be used to set up, contact and affirmatively send out each class member's share of the Settlement Fund. A detailed description of the method and manner of notice is set out in section V below, in the Stipulation, and in the attached Declaration of EisnerAmper. *See* Exhibit 6. The proposed method of distributing relief, directly sending checks to Class Members for whom there is a high degree of confidence in identification and location, without the need for proof of claim, merits approval.

---

[18] *See infra*, Page 18, Section 7.
[19] *See* ¶41 of Declaration of Class Counsel at Exh. 4 and ¶¶3-8 of Declaration of Defendants' Counsel at Exh. 5.

### 5. Attorneys' Fees

Notice of the Fee and Expense Application will be directed to Settlement Class Members in a reasonable manner and in compliance with Rule 23(h)(1) of the Federal Rules of Civil Procedure, due process, and the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995. Settlement Class Members will be given the opportunity to object to the Fee and Expense Application in compliance with Rule 23(h)(2) of the Federal Rules of Civil Procedure.

The Settlement creates a fund of $6,200,000.00 in cash for the benefit of the Settlement Class and Settlement Class Members will benefit from the Settlement that occurred because of the efforts of Class Counsel. Further, the Settlement creates additional rights and potential recovery to the Settlement Class that include: (i) $2,750,000.00 in Forgiven Fees are waived providing a significant monetary benefit to Settlement Class Members in the event of future collections by Yieldstreet[20]; and (ii) Settlement Class Members retaining all their rights to their investments including the rights to a share of Yieldstreet's efforts in lawsuits and collections against the personal guarantors of the BPDN borrowers, the loan Originator of the BPDNs and the international law firm that Yieldstreet is suing for acts and omissions related to the Settlement Class funds.

As stated in the proposed Notice, Class Counsel intends to seek an award of attorneys' fees in an amount of 33.33% of the 6.2 million dollar cash component of the settlement only, and no attorney fees will be proposed or sought on the $2,750,000 of Yieldstreet Fee Forgiveness part of the settlement.[21] If the Court factors in the Yieldstreet Fee Forgiveness (assuming future collections), the fee is only 23% of the total settlement. The proposed fee on the cash component

---

[20] *See Supra* FN1 for YieldStreet's on going collection and recovery efforts that would trigger the realization of part or all of the 2.75 million Fee Forgiveness.
[21] The proposed fee on the cash component is $2,066,666 plus expenses.

only would effectively be lower than 23% should Yieldstreet recover and distribute more than Forgiven Fees in the course of its collection efforts against third parties.   This fee request is in line with other settlements approved in recent cases in this District.   *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *21 (awarding 33 1/3% of $7.5 million settlement and noting it "is consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13 million settlement); *Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33 1/3% of $6.75 million settlement); *see also Solis v. Orthonet LLC*, 2021 WL 2678651, at *2 (S.D.N.Y. June 30, 2021) (approving 33% fee in Fair Labor Standards Act case).

**Lodestar**:  When the 33.33% is crosschecked against lodestar, the proposed counsel fee will be below, or on the very low end, of the lodestar reasonableness range regularly accepted by SDNY Courts.

### 6.  The Parties Have No Side Agreements Aside from a Standard Supplemental Agreement Regarding Exclusions

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  The Parties have no side agreement here, apart from a standard supplemental agreement which provides that in the event Settlement Class Members with a certain aggregate amount of Recognized Claims opt out of the Settlement, Yieldstreet has the option, but not the obligation, to terminate the Stipulation. The Parties have kept that supplemental agreement confidential to prevent potential opt-opts from seeking to gain undue leverage.  The Parties request this agreement remain confidential and will provide the supplemental agreement to the Court upon the Court's request.

### 7.  Settlement Class Members Are Treated Equitably 23(e)(2)(D)

The Settlement treats the Settlement Class equitably relative to each other by distributing the Net Settlement Funds on a *pro rata* basis based on each Settlement Class Member's Net Loss. To calculate each class member's Net Loss, the Claims Administrator will use Yieldstreet data that shows the amount of each investor's principal investment in the Settlement Class offerings, and how much Yieldstreet has paid to each investor to date (regardless of the characterization as interest, principal or other recovery). The difference between those two amounts reflects the balance of principal outstanding, the "Net Loss." The *pro-rata* payment to each investor will be a percentage of the Net Settlement Fund which percentage is calculated as each Settlement Class Member's net loss divided by the total net loss of the Settlement Class. Settlement Class Members can submit a challenge to the Claims Administrator to the amounts shown in Yieldstreet's records and the administrator will be empowered to review and resolve any disputes.[22]

### C. The Settlement Satisfies The 9 *Grinnell* Factors

#### 1. The Complexity, Expense, and Likely Duration of the Litigation; the Risks of Establishing Liability; and the Risks of Establishing Damages All Support Approval of the Settlement *Grinnel* Factors 1, 4, 5 and 6[23]

The first, fourth, fifth, and sixth factors of the *Grinnell* analysis are: (1) the complexity, expense and likely duration of the litigation; … (4) the risks of establishing liability; (5) the risks of establishing damages; … (6) and the risks of maintaining the class action through the trial, respectively. These factors overlap with the Rule 23(e)(2)(C)(i) consideration of "the costs, risks, and delay of trial and appeal." *See, e.g.*, Fed. R. Civ. P. 23(e)(2)(C)(i); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (noting these factors and their overlap). As set forth *infra*, Rule 23(e)(2)(C)(i) considerations and these factors are satisfied and all favor granting preliminary

---

[22] *See* ¶10 of the Plan of Allocation at Exh. 7.
[23] *Grinnell* factor 2, "the reaction of the settlement class" is inapplicable prior to disseminating notice. *See In re Payment Card Interchange Fee &Merch. Disc. Antitrust Litig.*,986 F. Supp. 2d 207, 221(E.D.N.Y. 2013) (declining to address "the reaction of the class to the settlement"), rev'd & vacated on other grounds, 827 F.3d 223 (2d Cir. 2016).

approval here.[24]

### 2. The Stage of the Proceedings and the Amount of Discovery Completed. *Grinnel* factor 3

The Court examines the stage of the proceedings and amount of discovery completed.  As discussed *infra*, Plaintiff and Class Counsel have developed a considerable record, and completed significant discovery prior to the settlement brought before the Court.  The totality of the litigation process and development of this case, as previously described, permitted Plaintiff and Class Counsel to intelligently weigh the strengths and weaknesses of their case, and make the decision to settle on these terms with Defendants.  The Settlement here also occurred at a later stage than many securities class actions which weighs in favor of finding that this third factor is satisfied.

### 3. The Ability of Defendants to Withstand a Greater Judgment. *Grinnel* factor 7

Under the 7th *Grinnell* factor, a court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement.  *See Grinnell*, 495 F.2d at 463.  Although there is no reason to question Yieldstreet's solvency or continued success, it is a non-public company, and its ability to withstand a greater judgment, as high as $50,459,722, naturally has been examined in confidential discovery.  Counsel attests[25] that uncertainty over this factor in a case against a private company supports the Settlement for $6,200,000.00 cash and $2,750,000.00 in Forgiven Fees against potential future recoveries.  While Defendants maintained insurance, there was no indication the insurers would contribute to any settlement until mediation was well under way.  In the absence of settlement approval now, the availability of insurance in the future is uncertain, and such uncertainty also merits that this *Grinnel* factor weighs in favor of settlement.[26]

---

[24] *See also* ¶23 Declaration of Class Counsel at Exhibit 4.

[25] See ¶35 of the Declaration of Class Counsel attached hereto at Exhibit 4.

[26] See ¶35 Declaration of Class Counsel attached hereto at Exhibit 4.

**4. The Reasonableness of the Settlement Fund in Light of the Best Possible Recovery (*Grinnel* factor 8), and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation (*Grinnel* factor 9) are satisfied.**

The reasonableness of the Settlement, is judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement is within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in the full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Settlement Class *now*, rather than the mere possibility of a payment years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

The Settlement here represents an excellent result. The $6,200,000 cash fund represents 12.29% of the maximum recoverable Settlement Class-wide damages. If in the future the $2,750,000 forgiven fees are realized through future collections, that 12.29% jumps to 17.6%, and even higher if there are amounts distributed from the future potential collections.

The 12.29% cash, plus forgiveness of accrued fees making it potentially up to 17.6%, all while retaining the prospect of additional return of principal, is a large recovery.[27]  12.29% is at least 200% to 300% higher than the median 3.6% – 5% recovery in other class action securities cases.  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2022 Review and Analysis,* CORNERSTONE RESEARCH (2022) at p. 6 (3.6% in 2022 and 5% median settlement recovery of "simplified tiered damages" in Rule 10b-5 for the years 2013-2022), at p. 9 (5.9% recovery after class certification ruling and before filing of MSJ, which drops to 3.8% after filing of MSJ), and at p. 18 (5% median settlement for settlements in the "Financial" Industry for the years 2013-2022).  *See, e.g., In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies showing that the average securities class action settlement since 1995 has resulted in a recovery of 5.5% to 6.2% of estimated losses); *In re Celera Corp. Sec. Litig*., 2014 WL 722408, at *4 (N.D. Cal. Feb. 25, 2014). (granting preliminary approval where plaintiffs stood to recover 5.5% of their estimated losses); *In re Zynga Sec. Litig.,* 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015*)* (granting preliminary approval of settlement that equated to 10% of estimated losses because it "remain[ed] above the typical recovery in securities litigation"); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")[28].

The 12.29% minimum recovery, which has the potential to meet or exceed 17.6%, satisfies the eighth and ninth *Grinnell* factors and strongly supports preliminary approval.

## V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED, AND THE PROPOSED CLAIMS ADMINISTRATOR SHOULD BE APPOINTED

---

[27] *See* ¶49 Declaration of Class Counsel at Exhibit 4.
[28] *See also* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value for securities class actions in 2018 was just 2.6% of estimated damages and the median value for cases from 1996 through 2018 with a similar range of estimated damages was only 3.1%).

### A.  Proposed Claims Administrator

The Parties propose to retain Eisner Advisory Group, LLC ("EisnerAmper" or "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims.  EisnerAmper is an experienced large and well-respected class action administration firm and has handled a  number of class actions in the past.[29]

### B.  Manner of Notice.

Plaintiffs propose individual notice by e-mail and also physical mail with diligent follow up of any bounced e-mails and returned physical notices.[30]

This is a case where there have been exceptionally strong contacts with the class members.[31]  Yieldstreet maintains both email and physical mail addresses for all class members, which is essential data that is collected as part of the accredited investor subscription and onboarding process and that investors are urged to update (and from experience, they do).   The parties are confident in being able to contact the Settlement Class Members because the Settlement Class Members regularly communicate with Yieldstreet.   Across the three Yieldstreet class offerings in issue  (1855 investors), 1766 or 95% of investors demonstrated that their accounts are active by affirmatively/actively logging on to the Yieldstreet portal between September 2023 and September 2024.[32]   For the entire Settlement Class Member population, Yieldstreet has used its portal to post annual tax reporting/documents, also notifying investors of the posting by email, and last tax season did not receive a single request for alternative mailing or other indicia of non-delivery.[33]  Although neither Class Counsel nor Defendants' Counsel has any reason to believe that

---

[29] *See* ¶¶ 1-2 Declaration of EisnerAmper at Exhibit 6.
[30] *See* ¶¶ 11-12 Declaration of EisnerAmper at Exhibit 6 and ¶ 17 Plan of Allocation at Exhibit 7.
[31]  *See* Declaration of Defendants' Counsel at Exhibit 5.
[32] *See* ¶ 5 Declaration of Defendants' Counsel Jonathan Shapiro at Exh. 5.
[33] *See* ¶ 6 Declaration of Defendants' Counsel at Exh. 5.

any of the addresses are no longer current, a duplicative individualized notice process that goes to both email and physical addresses of record naturally will also be expected to trigger "return to sender" or similar electronic bounce-back in the event of a delivery problem, and should that occur for any Settlement Class Member, the Claims Administrator will diligently attempt to call such person(s) with phone numbers provided by Defendants, use a reputable skip tracing service, and use diligent efforts to locate such person(s) through internet searches including social media searches. *See* ¶17 Plan of Allocation at Exhibit 7, and ¶¶10-11 Declaration of EisnerAmper at Exhibit 6.

Accordingly, Plaintiff proposes that the best notice practical under the circumstances in accordance with Rule 23 is to give notice to Settlement Class Members by: (1) E-Mailing the Summary Notice (Exhibit 2 hereto) to the Settlement Class; and (2) sending a physical Summary Notice to each Settlement Class Member's physical address which they provided Yieldstreet in connection with their Yieldstreet account and application.[34]

In addition, the Claims Administrator will employ a dedicated toll-free informational hotline which will be available 24 hours per day, seven days per week. The hotline will utilize an interactive voice response (IVR) system where Settlement Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Settlement Class Members can reach a live Claims Administrator operator upon request.[35]

---

[34] *See, e.g., Bourlas v. Davis L. Assocs.*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006) ("The parties have agreed to deliver notice by first class mail to each individual class member. … There is no indication that any of the class members cannot be identified through reasonable efforts. The court therefore finds the proposed manner of delivery sufficient under Rule 23(c)(2)(B)"); *See also Hunt v. Check Recovery Sys., Inc.,* No. C05 04993 MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007), aff'd sub nom. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009) (Notice by first class mail satisfies "best notice practicable" in class action with approximately 22,300 class members who are readily identifiable); *Toler v. Glob. Coll. of Nat. Med., Inc.*, No. 13-10433, 2015 WL 13037116, at *2 (E.D. Mich. May 19, 2015) (Where the names and addresses of the class members are easily ascertainable, individual notice is the "best notice practicable" within the meaning of Rule 23(c)(2)(B). … A class notice sent by first-class mail is generally considered the most efficient and effective means of reaching individual class members.").
[35] *See* ¶15 Plan of Allocation at Exhibit 7.

In addition, the Claims Administrator will maintain www.YSClassSettlement.com. This dedicated website will contain documents such as the Detailed Notice, Summary Notice, the Stipulation, the Motion for Final Approval and Class Counsel's Fees and Expenses (upon filing at least 14 days prior to the opt-out deadline) and the Preliminary Approval Order.[36] This dedicated website will be available through login instructions provided to all Settlement Class Members in both the Summary and Detailed Notices.

### C.    Form of Notice.

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114, 2005 WL 15056 (2nd Cir. (N.Y.) (2005)) "Notice is 'adequate if it may be understood by the average class member.'" *Id.* at 114 (quoting Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* §11:53, at 167 (4th ed. 2002)). The proposed Summary and Detailed Notices attached satisfy this standard. The Notices provide specifics on the date, time, and place of the Settlement Hearing, and sets forth the procedures for opting out, objection, and optional attendance at the hearing. Furthermore, the Notices provide this information in a format that is accessible to the reader and are also available, along with all other relevant documents, on the Settlement website. The Notices comply with each requirement of Rule 23.

Proposed Notice also prominently makes the disclosures required by the PSLRA:

> (1) a statement of plaintiff recovery; (2) a statement of potential outcome of the case; (3) a statement of attorneys' fees and costs sought; (4) identification of lawyers' representatives; (5) the reasons for settlement; and (6) a cover page summarizing the information contained in the foregoing statements.

---

[36] *See* ¶13 Declaration of EisnerAmper at Exhibit 6 and ¶15 Plan of Allocation at Exhibit 7.

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105 (D. Conn. 2010) (citing Exchange Act, §21D(a)(7), footnotes omitted). *See* Exhibits 1 "Summary Notice" and 2 "Detailed Notice".

### D.  CAFA Notice

Pursuant to the Stipulation, the Claims Administrator will serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA") no later than seven (7) calendar days before the Settlement Hearing.   The Claims Administrator will serve Class Counsel and the Court, by affidavit or declaration, attestation of compliance with 28 U.S.C. § 1715(b).

### E.    PROPOSED SCHEDULE

Plaintiff requests the Court set the following proposed schedule of events leading to the Settlement Hearing in the proposed Preliminary Approval Order.

| | |
|---|---|
| Deadline for e-mailing the Notice and Proof of Claim to Settlement Class Members (the "Notice Date") | 10 business days from receipt of the contact information from Defendants (which is due within 3 business days of Preliminary approval) |
| Filing and posting memoranda in support of Final Approval of the Settlement and Class Counsel application for award of attorneys' fees and expenses | 14 calendar days before the deadline for objections to be filed |
| Deadline for objections and exclusions | 60 calendar days after notice, and no later than 21 calendar days prior to the Settlement Hearing |
| Filing and posting of reply memoranda in Support of the Settlement, Plaintiff's Counsel application for an award of attorneys' fees and expenses | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At the Court's convenience but no sooner than 100 days after any preliminary approval order, the Settling Parties respectfully request the Court set a final hearing on _____ __, 2025 at ____ am/pm. (date and time set by the Court). |

### F.    CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests the Court enter the Preliminary Approval Order which will provide: (i) preliminary approval of the Settlement; (ii) approval of

the proposed form and manner of notice to the Settlement Class; and (iii) a hearing date and time to consider the final approval of the Settlement and related matters.

Respectfully submitted this 25th day of October, 2024.

By: /s/Brian B. Pastor, Esq.

**SONN LAW GROUP, P.A.**
Jeffrey R. Sonn, Esq.
Brian B. Pastor, Esq.
One Turnberry Place
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180
Phone: (305) 912-3000 Fax: (786) 485-1501
jsonn@sonnlaw.com
bpastor@sonnlaw.com
service@sonnlaw.com

**PEIFFER WOLF CARR KANE CONWAY & WISE LLP**
Daniel B. Centner, Esq.
Joseph Peiffer, Esq.
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Phone: (504) 523-2434 Fax: (504) 608-1465
jpeiffer@peifferwolf.com
dcentner@peifferwolf.com

*Attorneys for the Settlement Class*

## CERTIFICATE OF SERVICE

I certify that on October 25th , 2024 I electronically filed the foregoing with the Clerk of Court using the CM/EMF system and which will send notification of such public filing to all counsel registered to receive such notice.

/s/_Brian B. Pastor
Brian B. Pastor, Esq.